PEOPLE v GOODIN

Docket No. 239280. Submitted June 3, 2003, at Grand Rapids. Decided July 8, 2003, at 9:00 A.M. Leave to appeal sought.

Justin R. Goodin was convicted by a jury in the Ottawa Circuit Court, Edward R. Post, J., of failing to stop at the scene of an accident resulting in serious injury or death of a person, MCL 257.617, and negligent operation of a vehicle causing homicide, MCL 750.324, after an incident of "road rage." The defendant and another driver took turns passing each other in their vehicles, cutting back in front of the other driver, and then slowing down, as they traveled on I-96. During the last incident, the defendant passed, cut back in front of the other driver, and applied his brakes, which allegedly caused the other driver to brake and lose control of his vehicle, resulting in a serious accident. The driver of the other vehicle died from his injuries, and his three passengers were injured. The defendant did not stop his vehicle or return to the scene of the accident. The defendant appealed his convictions, arguing that his constitutional right against self-incrimination was violated when he was charged under both statutes and that the prosecutor committed misconduct by eliciting testimony at trial that defendant did not stop at the scene of the accident.

The Court of Appeals *held*:

1. The defendant argued that charging him with both failure to stop and negligent homicide violated his constitutional right against self-incrimination because, had he stopped and given the information required under MCL 257.617, he would have incriminated himself with respect to the negligent-homicide charge by admitting that he was at the scene and involved in the events leading to the accident. In order to invoke the constitutional privilege against self-incrimination, the compelled disclosures must, in and of themselves, confront the claimant with substantial hazards of self-incrimination. The required disclosure of neutral information, such as one's name and address, aimed at the public at large, and in an essentially noncriminal and regulatory area of inquiry, does not create a substantial risk of self-incrimination. Here, the disclosures required under MCL 257.617 and MCL 257.619 are neutral, do not implicate a driver in criminal conduct, and are regulatory in nature.

Thus, the required disclosures did not create a substantial risk of self-incrimination, and the defendant's right against self-incrimination was not violated when he was charged and convicted under both statutes.

2. The prosecutor did not commit misconduct by eliciting testimony that defendant was not present at the scene of the accident, because a defendant's right against self-incrimination is not violated when a prosecutor comments on a defendant's silence when the silence occurred before any police contact, and a prosecutor may comment on a defendant's failure to report a crime when reporting the crime would have been natural if the defendant's version of the events were true. Furthermore, the testimony was admissible as evidence of flight and as evidence of the defendant's failure to stop, which was an element of the crime set forth in MCL 257.617.

3. Given the resolution of the first two issues on appeal, the defendant's claim of ineffective assistance of counsel is without merit.

Affirmed.

CONSTITUTIONAL LAW — COMPELLED SELF-INCRIMINATION — FAILURE TO STOP AT SCENE OF ACCIDENT RESULTING IN SERIOUS INJURY OR DEATH.

To invoke the constitutional privilege against self-incrimination, the compelled disclosures must, in and of themselves, confront a claimant with substantial hazards of self-incrimination; the required disclosure of neutral information, such as one's name and address, aimed at the public at large, and in an essentially noncriminal and regulatory area of inquiry, does not create a substantial risk of self-incrimination; the disclosures required under the statute that makes it a crime to fail to stop at the scene of an accident resulting in serious injury or death are neutral, do not implicate a driver in criminal conduct, are regulatory in nature, and do not create a substantial risk of self-incrimination (US Const, Am V; Const 1963, art 1, § 17; MCL 257.617).

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *Ronald J. Frantz*, Prosecuting Attorney, and *Gregory J. Babbitt*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *P. E. Bennett*) for the defendant.

Before: SMOLENSKI, P.J., and COOPER and FORT HOOD, JJ.

SMOLENSKI, P.J. Following a jury trial, defendant Justin R. Goodin was convicted of failing to stop at the scene of an accident resulting in serious injury or death of a person, MCL 257.617, and negligent operation of a vehicle causing homicide, MCL 750.324. He was sentenced as a third-offense habitual offender, MCL 769.11, to 36 to 120 months of imprisonment for the failure-to-stop conviction, and 24 to 48 months of imprisonment for the negligent-homicide conviction. Defendant appeals as of right. We affirm.

On March 17, 2001, defendant and Jeremy Bushen were driving their respective trucks on eastbound I-96 in Wright Township. Bushen's truck had three passengers. The evidence indicates that this case involves a prime example of a "road rage" incident that ended tragically. There was conflicting testimony regarding the exact sequence of events leading to the accident, but it is clear that defendant and Bushen took turns passing each other, cutting back in front of the other driver, and then slowing down. The last time this occurred Bushen was driving in the left lane and defendant passed him in the right lane. Defendant then moved into the left lane in front of Bushen, who flashed the high-beam headlights of his truck at defendant. In response, defendant applied his brakes, causing Bushen to do the same. Bushen lost control of his truck, which crossed the median, rolled several times, and landed upright in the middle of the westbound lanes.

Bushen and two of the three passengers were ejected from the truck. All four were injured, Bushen the most severely. Bushen died several hours later

from a head injury he sustained. Defendant did not stop when the accident occurred, but rather continued driving to Grand Rapids where he ate dinner with his parents. Defendant testified that he did not stop because he was on probation and did not want to get into trouble. Defendant further testified that he did not believe he caused the accident because his truck was not that close to Bushen's truck when the defendant applied his brakes.

I

Defendant first argues that charging him with both failure to stop at the scene of an accident and negligent homicide violated his constitutional right against self-incrimination. Defendant asserts that had he stopped and given the required information, he would have incriminated himself with respect to the negligent-homicide charge by admitting that he was at the scene and involved in the events leading to the accident. We disagree.

Constitutional issues are reviewed de novo on appeal. *People v Herron*, 464 Mich 593, 599; 628 NW2d 528 (2001). The Fifth Amendment of the United States Constitution and the Michigan Constitution provide that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself . . . ." US Const, Am V; Const 1963, art 1, § 17. The privilege extends to answers that " 'would in themselves support a conviction,' " as well as those that " 'would furnish a link in the chain of evidence needed to prosecute the claimant.' " *Ohio v Reiner*, 532 US 17, 20; 121 S Ct 1252; 149 L Ed 2d 158 (2001), quoting *Hoffman v United States*, 341 US 479, 486; 71 S Ct 814; 95 L Ed 1118 (1951).

Under MCL 257.617, it is a felony offense for the driver of a vehicle who knows or has reason to believe that he was involved in an accident resulting in serious personal injury or death to fail to stop at the scene and remain there until fulfilling the requirements of MCL 257.619. MCL 257.619 requires the driver involved in an accident to give his name, address, registration number of the vehicle driven, name and address of the vehicle's owner, and to display his driver's license, and further requires him to render injured persons reasonable assistance in securing medical aid or transportation. Additionally, the negligent-homicide statute, MCL 750.324, states that it is a misdemeanor for a person to negligently operate a vehicle when the operation causes another's death.

To support his argument, defendant relies on *Haynes v United States*, 390 US 85; 88 S Ct 722; 19 L Ed 2d 923 (1968), which held that a prosecution for failure to register a firearm under 26 USC 5841, and possession of an unregistered firearm under 26 USC 5851, violated the defendant's Fifth Amendment privilege against compelled self-incrimination. The *Haynes* Court reasoned that a prospective registrant could realistically expect the act of registering to increase the likelihood of his prosecution because the registration requirement was "directed principally at those persons who have obtained possession of a firearm without complying with the Act's other requirements," and persons who were "inherently suspect of criminal activity." *Id.* at 96 (internal quotation omitted). However, the United States Supreme Court revisited this issue, the interaction of the Fifth Amendment's right against self-incrimination and statutory disclosure

requirements, in a subsequent case, *California v Byers*, 402 US 424, 433; 91 S Ct 1535; 29 L Ed 2d 9 (1971). We find the *Byers* decision controlling.

In *Byers*, the Court considered whether the California Vehicle Code's "hit and run" statute infringed on the constitutional privilege against compelled self-incrimination. In reaching the conclusion that there was no conflict, the Court stated that in order to invoke the privilege against compelled self-incrimination, the compelled disclosures must, in and of themselves, confront the claimant with "substantial hazards of self-incrimination." *Id.* at 429. The *Byers* Court determined that disclosures of neutral information, such as one's name and address, aimed at the public at large and not a "highly selective group inherently suspect of criminal activities" in "an essentially noncriminal and regulatory area of inquiry," do not create a substantial risk of self-incrimination. *Id.* at 430.

In this case, as in *Byers*, the disclosures of one's name, address, vehicle-registration number, and driver's license required by MCL 257.617 and MCL 257.619 are neutral and do not implicate a driver in criminal conduct. Moreover, MCL 257.617 is not directed at a "highly selective group" or a group "inherently suspect of criminal activities," but rather is aimed at any driver involved in an accident that results in serious personal injuries or death. Further, following the reasoning employed in *Byers*, driving is a lawful activity and it is not unlawful to be involved in a car accident that results in serious injury. In addition, the purpose of MCL 257.617 is essentially regula-

tory.[1] Thus, the disclosures mandated under MCL 257.617 and MCL 257.619 do not create a substantial risk of self-incrimination.

Furthermore, although defendant argues that the act of stopping and reporting would have increased his risk of prosecution for negligent homicide, any inferences that could be drawn from the act of stopping are not "testimonial in the Fifth Amendment sense" and disclosure of one's name and address is a neutral act that "identifies but does not by itself implicate anyone in criminal conduct." *Byers, supra* at 431-434. Therefore, we hold that being charged and convicted of both failure to stop and negligent homicide does not violate a defendant's Fifth Amendment privilege against compelled self-incrimination.[2] Because Michigan's constitutional provision is substantively identical to the federal constitutional provision and we find no compelling reason to afford defendant greater protection under Michigan's constitution, defendant's state claim fails as well. *People v Reichenbach,* 459 Mich 109, 118-119; 587 NW2d 1 (1998).

Defendant also argues that the prosecutor's misconduct denied him a fair trial. Because defendant failed to preserve this issue, we review it only for plain error affecting defendant's substantial rights. *People v*

---

[1] The purpose of the act includes such objectives as regulating the operation of vehicles on public highways, determining financial responsibility, and regulating use of streets and highways. 1949 PA 300.

[2] Many other states have also held that disclosure requirements under similar vehicle-code provisions do not violate a defendant's right against compelled self-incrimination. See, e.g., *State v Adams,* 181 Ariz 383; 891 P2d 251 (Ariz Ct App, 1995); *State v Melemai,* 64 Haw 479; 643 P2d 541 (1982); *People v Lucas,* 41 Ill 2d 370; 243 NE2d 228 (1968); *People v Samuel,* 29 NY2d 252; 277 NE2d 381 (1971); *Lamb v State,* 488 P2d 1295 (Okla Crim App, 1971); *State v Smyth,* 121 RI 188; 397 A2d 497 (1979); *Banks v Com,* 217 Va 527; 230 SE2d 256 (1976).

*Leshaj*, 249 Mich App 417, 419; 641 NW2d 872 (2002). "Reversal is warranted only when the error resulted in the conviction of an actually innocent defendant or when the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Id.*

The test for prosecutorial misconduct is, viewing the alleged misconduct in context, whether the defendant was denied a fair and impartial trial. *Id.* In this case, defendant asserts that the prosecutor committed misconduct and violated his right against self-incrimination when the prosecutor elicited testimony from witnesses that defendant was not present at the scene of the accident and did not contact the police on the days that followed, and that the prosecutor emphasized this testimony during his closing argument. First, the right against self-incrimination prohibits a prosecutor from commenting on the defendant's silence in the face of accusation, but does not curtail the prosecutor's conduct when the silence occurred before any police contact. *People v Lawton*, 196 Mich App 341, 353; 492 NW2d 810 (1992). Thus, a prosecutor may comment on a defendant's failure to report a crime when reporting the crime would have been natural if the defendant's version of the events were true. *Id.*

Second, evidence of flight is admissible to support an inference of "consciousness of guilt" and the term "flight" includes such actions as fleeing the scene of the crime. *People v Coleman*, 210 Mich App 1, 4; 532 NW2d 885 (1995). Also, this Court has held that evidence of flight does not infringe a defendant's privilege against self-incrimination and the prosecutor is entitled to comment on the evidence of flight and the

inferences that can be drawn therefrom. *People v Dixon*, 84 Mich App 675, 682; 270 NW2d 488 (1978).

Further, to the extent that defendant is challenging the prosecutor's statements concerning his failure to stop at the scene of the crime at the time of the accident, defendant's failure to stop constituted an element of the crime set forth in MCL 257.617. It is the prosecutor's responsibility to establish all elements of the crime at trial. *People v Jolly*, 442 Mich 458, 465; 502 NW2d 177 (1993). Additionally, and perhaps most importantly, a prosecutor is free to argue the evidence and all reasonable inferences arising from it as they relate to the prosecutor's theory of the case. *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995). Therefore, we find no error.

II

Lastly, we conclude that defendant's claim of ineffective assistance of counsel is without merit because the basis for his argument depended on the validity of his first two issues on appeal. Because we conclude that defendant's right against compelled self-incrimination was not violated and the prosecutor's conduct was proper, defense counsel was not ineffective for failing to address these issues. Defense counsel is not required to make a meritless motion or a futile objection. *People v Fike*, 228 Mich App 178, 182; 577 NW2d 903 (1998).

Affirmed.