# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CHARLES EUGENE WHITE,

        Defendant-Appellant.

UNPUBLISHED
October 20, 2015

No. 312648
Wayne Circuit Court
LC No. 12-001593-FC

Before: GLEICHER, P.J., and SAWYER and MURPHY, JJ.

PER CURIAM.

A jury convicted defendant of assault with intent to do great bodily harm less than murder, MCL 750.84, for which he was sentenced to 38 months to 10 years' imprisonment, and felonious assault, MCL 750.82, for which he was sentenced to 30 months to 4 years' imprisonment. Defendant appeals as of right, and we affirm.

Defendant's convictions arise from a confrontation between defendant and his girlfriend's son-in-law, Mark Howard, which began in the parking lot of a bowling alley, and ended in the parking lot of a fast-food chicken restaurant across the street. According to Howard, defendant attacked him with a box cutter for no apparent reason, cutting his hand. Howard retrieved a pole from his van to fight back. He chased defendant across the street to the parking lot of the restaurant, where the fight continued until the police arrived. Defendant claimed that Howard attacked him for no apparent reason and kept knocking him to the ground. Defendant testified that he pulled out the box cutter and swung it in self-defense, but did not cut Howard, and then ran across the street. According to defendant, Howard then pursued him and hit him with the pole, at which point defendant cut him in self-defense.

## I. SELF-REPRESENTATION

Defendant first argues that the trial court violated his right of self-representation when it restricted his movements in the courtroom, thereby forcing him to have co-counsel represent him for the remainder of the trial. We disagree.

A criminal defendant has a right to waive counsel and represent himself. *People v Kevorkian,* 248 Mich App 373, 417; 639 NW2d 291 (2001); MCL 763.1. A defendant who represents himself "must be allowed to control the organization and content of his own defense, to make motions, to argue points of law, to participate in voir dire, to question witnesses, and to

address the court and the jury at appropriate points in the trial." *McKaskle v Wiggins*, 465 US 168, 174; 104 S Ct 944; 79 L Ed 2d 122 (1984). A litigant who represents himself is held "to the same standard in the presentation of his case as would be required of a member of the bar." *Baird v Baird*, 368 Mich 536, 539; 118 NW2d 427 (1962). He cannot " 'abuse the dignity of the courtroom' " and must " 'comply with relevant rules of procedure and substantive law.' " *Faretta v California*, 422 US 806, 834 n 46; 95 S Ct 2525; 45 L Ed 2d 562 (1975) (citation omitted). Whether a defendant's right to self-representation has been violated depends "on whether the defendant had a fair chance to present his case in his own way." *McKaskle*, 465 US at 177. "Once a *pro se* defendant invites or agrees to any substantial participation by counsel, subsequent appearances by counsel must be presumed to be with the defendant's acquiescence, at least until the defendant expressly and unambiguously renews his request that standby counsel be silenced." *Id*. at 183.

The record does not support defendant's claim that the trial court's restrictions on his movements compelled him to give up his right of self-representation, and even if the restrictions actually caused defendant to discontinue self-representation, it would not amount to a constitutional or statutory violation of defendant's right to self-representation. When defendant rose to give his opening statement, the trial court stopped him from walking to a particular location and directed him to "stand over there." Defendant complained that he was not given the "same opportunity as counsel." Defendant gave an opening statement, raised objections during the direct examination of Howard, responded to the prosecutor's requests to admit evidence, and cross-examined Howard and another witness. The next day, defendant complained about "what took place in the Court yesterday," i.e., that he was not allowed "to confront the jury like the prosecutor," to "go[] over here," or to "go[] up to the stand." The court dismissed defendant's complaints as "ridiculous." Defense counsel was allowed to approach for a sidebar conference, and that appeared to be the end of the matter.

Defendant continued to represent himself by raising objections during the direct examination of a third witness, by conducting cross-examination of that witness, by requesting the admission of evidence, and by responding to a similar request by the prosecutor. After the third witness was excused, defendant asked that co-counsel take over his representation. Court-appointed counsel, who had been assisting defendant, then took over and handled the trial to its conclusion. Defendant made no request, let alone an express and unambiguous request, to renew self-representation.

Defendant did not give any particular reason for his request to have co-counsel take over the representation of defendant's case, and defendant admitted that he had not been pressured or forced to give over his defense to counsel. Thus, the record indicates that defendant knowingly and voluntarily waived his right to self-representation. *McKaskle*, 465 US at 183. Furthermore, the record does not support defendant's claim that the trial court's limited and understandable restrictions on his movements during trial infringed on defendant's right of self-representation. The limited restrictions did not prevent defendant from maintaining control over all aspects of his case and fully participating in the trial. Thus, the court did not unconstitutionally nullify defendant's right to self-representation. Indeed, in *People v Arthur*, 495 Mich 861, 862; 836 NW2d 694 (2013), our Supreme Court observed and held:

The trial court did not unconstitutionally "nullify" the defendant's right to self-representation by declining to remove the defendant's leg shackles. That the defendant elected to relinquish his right of self-representation rather than exercise that right while seated behind the defense table does not amount to a denial of the defendant's right of self-representation. . . . .

. . .

While a defendant's right to self-representation encompasses certain specific core rights, including the right to be heard, to control the organization and content of his own defense, to make motions, to argue points of law, to participate in voir dire, to question witnesses, and to address the court and the jury at times, the right to self-representation is not unfettered. [Citations omitted.]

Here, defendant was not even shackled, and the trial court merely limited some of his movements in the courtroom, while fully allowing him to exercise all of the rights attendant to self-representation. Reversal is unwarranted.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next argues that trial counsel was ineffective for failing to call defendant's niece, Jerroll Sanders, to testify at trial. We note that this Court granted defendant's motion for remand to allow defendant to "move for a new trial on the issue of ineffective assistance of counsel" relative to the failure to call Sanders as a witness and other grounds.[1] The trial court began a *Ginther*[2] hearing, but before defendant completed his examination of trial counsel, defendant repeatedly demanded that he be allowed to withdraw his motion for a new trial and refused to continue with the hearing.[3] The trial court eventually granted defendant's request to withdraw his motion for new trial. Therefore, we conclude that defendant has waived this issue. Waiver is the intentional relinquishment or abandonment of a known right. *People v Carter,* 462 Mich 206, 215; 612 NW2d 144 (2000). A party who waives an issue in the trial court cannot raise it on appeal. *Marshall Lasser, PC v George*, 252 Mich App 104, 109; 651 NW2d 158 (2002).

Even if we considered this issue for any errors apparent from the limited record that was developed before defendant withdrew his motion, see *People v Wilson,* 242 Mich App 350, 352; 619 NW2d 413 (2000), defendant would not be entitled to relief. To establish ineffective assistance of counsel, defendant must "show both that counsel's performance fell below objective standards of reasonableness, and that it is reasonably probable that the results of the proceeding would have been different had it not been for counsel's error." *People v Frazier*, 478

---

[1] See *People v White*, unpublished order of the Court of Appeals, entered January 31, 2014 (Docket No. 312648).

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[3] At this point, Sanders had already given her testimony at the *Ginther* hearing.

Mich 231, 243; 733 NW2d 713 (2007). A defendant must overcome the strong presumption that counsel's performance constituted sound trial strategy, but an appellate court is not permitted to insulate the review of counsel's performance by simply calling it trial strategy – the strategy must be sound, with decisions being objectively reasonable. *People v Ackley*, __ Mich __, __; __ NW2d __ (2015); slip op at 7. "This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *People v Rockey,* 237 Mich App 74, 76-77; 601 NW2d 887 (1999) (citation omitted). "Ineffective assistance of counsel may be established by the failure to call witnesses only if the failure deprives defendant of a substantial defense." *People v Julian,* 171 Mich App 153, 159; 429 NW2d 615 (1988). "A substantial defense is one that might have made a difference in the outcome of the trial." *People v Kelly,* 186 Mich App 524, 526; 465 NW2d 569 (1990).

Testimony at trial indicated that defendant started swinging the box cutter at Howard in the bowling alley parking lot. Howard claimed that defendant cut his hand, but defendant claimed that he did not cut Howard's hand until they retreated to the parking lot of the restaurant across the street. Sanders testified at the *Ginther* hearing that she went to the bowling alley parking lot three days later and did not see any blood. Even if this testimony is credited, there are several plausible explanations for why Sanders did not see any blood there. Defendant assumes that Sanders did not see any blood because Howard was not actually cut as he claimed. However, it is possible that Howard was not as seriously cut initially, or did not start bleeding heavily on the pavement until he reached the restaurant parking lot. Further, three days had passed since the incident and it is possible that any blood stains or drops either were cleaned or erased by environmental conditions in the interim. In addition, there is no indication that Sanders, who was not present during the offense, was aware of the precise location where the altercation took place, or knew of Howard's movements within the parking lot. Further, Sanders admitted that there were cars in the parking lot when she visited the scene three days later, and thus it is possible that blood was present on the pavement but obscured by parked cars. Because Sanders's testimony would not have disproved Howard's testimony that defendant cut him in the bowling alley parking lot, it was not objectively unreasonable for counsel not to call her as a witness at trial.

In addition, defendant cannot show that he was prejudiced by the fact that Sanders was not called to testify. As indicated, Sanders's testimony would have been only minimally probative of whether Howard's hand had been cut in the bowling alley parking lot. Moreover, defendant elicited testimony from a witness, Gareth Shubitowski, that he did not see or hear anything that led him to believe that Howard had been cut in the bowling alley parking lot, and Shubitowski testified that Howard was able to grip and swing a pole. Defendant elicited testimony from Officer Crystal Pasciak that she did not go over to the bowling alley parking lot and did not look at Howard's van or look for blood trails. Counsel elicited testimony from another police officer, Michael Largent, that he did not look for a trail of blood, and from Officer Daniel Bailey that he did not look for blood in the bowling alley parking lot or look at Howard's van. This evidence allowed defense counsel to argue that there was no blood in the parking lot because Howard was not actually cut at that time. Sanders's testimony that she did not see any blood in the bowling alley parking lot would have provided an additional reason supporting that argument, but was not so significant that it is reasonably probable that the jury would have

accepted defendant's claim of self-defense had Sanders testified. Accordingly, defendant has not established that counsel was ineffective for failing to call Sanders as a witness.

## III. DEFENDANT'S STANDARD 4 BRIEF

Defendant raises two additional issues in a pro se supplemental brief, filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4, neither of which have merit.

## A. DUE PROCESS

Defendant argues that the police and prosecution failed to preserve critical video evidence, and failed to produce various witness statements, thereby violating his right to due process. Whether a party has been afforded due process is a question of law that is reviewed de novo on appeal. *People v Wilder*, 485 Mich 35, 40; 780 NW2d 265 (2010).

A defendant's due process right to evidence has been recognized in cases such as *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963), and *Arizona v Youngblood*, 488 US 51; 109 S Ct 333; 102 L Ed 2d 281 (1988). In *Brady*, 373 US at 87, the Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." To establish a *Brady* violation, a defendant must prove that: (1) the state possessed evidence of exculpatory or impeachment value to the defendant; (2) the prosecution suppressed the evidence; and (3) the evidence, viewed in its totality, was material, meaning that had the evidence been disclosed to the defense, a reasonable probability exists that the result of the proceedings would have been different. *People v Chenault*, 495 Mich 142, 150-151, 155; 845 NW2d 731 (2014).

In *Youngblood*, 488 US at 58, the Court held that the failure to preserve potentially useful evidence does not constitute a denial of due process absent a showing of bad faith by the police. To establish a *Youngblood* violation, "the defendant must show: (1) that the government acted in bad faith in failing to preserve the evidence; (2) that the exculpatory value of the evidence was apparent before its destruction; and (3) that the nature of the evidence was such that the defendant would be unable to obtain comparable evidence by other reasonably available means." *United States v Jobson*, 102 F3d 214, 218 (CA 6, 1996).

The trial court ordered the police to "obtain and secure and provide a copy to the defense of any and all security videos" from the bowling alley, the restaurant, and surrounding businesses. Only the bowling alley had a security system. The police obtained the video recording with respect to the relevant time period and it was provided to defendant, but it did not show the altercation between defendant and Howard. Defendant then requested additional footage covering a longer time period, but by the time the request was made, the bowling alley had erased the recordings from the day of the incident. Because there is nothing in the record to indicate that the police or prosecutor had any video recordings other than what was provided to defendant, much less recordings having exculpatory or impeachment value, defendant has not established a *Brady* violation. While it is possible that any additional video recordings from the bowling alley, had they captured the incident, may have been potentially useful, the trial court found that the police did not act in bad faith and defendant has not provided any basis for

concluding otherwise. Therefore, defendant has not established a due process violation with respect to the failure to preserve any video recordings.

Upon request, a defendant is entitled to discovery of a written or recorded statement of a lay witness to be called at trial. MCR 6.201(A)(2). There is nothing in the record to indicate that defendant requested any witness statements. At a pretrial hearing, defense counsel stated that because he had not received any witness statements, he sent an investigator to interview the witnesses and the investigator learned that they had provided written statements to the police. Defense counsel asked the prosecutor about the witness statements and learned that the prosecutor had not received them either. The statements were subsequently provided to the prosecutor, who turned them over to the defense. While the witness statements may not have been turned over immediately, they were ultimately not suppressed. Therefore, defendant has not established a due process violation with respect to the witness statements.

Because defendant has failed to establish a due process violation, his related claim that trial counsel was ineffective for failing to file a motion to dismiss on that ground must fail. "Defense counsel is not required to make a meritless motion or a futile objection." *People v Goodin*, 257 Mich App 425, 433; 668 NW2d 392 (2003).

## B. SEARCH OF DEFENDANT'S JAIL CELL

Defendant lastly argues that the prosecutor violated his constitutional rights by ordering jail personnel to search his cell and remove his personal property, including the witness statements and other documents relating to his defense and trial strategy. A review of the record shows that defendant first accused the court of ordering the search. When the court denied it, defendant accused the prosecutor. The prosecutor acknowledged that jail personnel had removed the witness statements to redact personal information, but denied that he or his office was involved. Because defendant has not offered anything other than his own unsupported assertions that the prosecutor ordered the removal of his personal papers, used them to discover defendant's trial strategy, and had them altered to hamper defendant's defense, we reject his claim that his constitutional rights were violated. Accordingly, defendant's related claim for ineffective assistance of counsel also cannot succeed.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ David H. Sawyer
/s/ William B. Murphy