# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

KALLAY RANDAL BATCHELOR,

Defendant-Appellant.

UNPUBLISHED
June 22, 2017

No. 330312
Delta Circuit Court
LC No. 14-009025-FC

Before: TALBOT, C.J., and BECKERING and M. J. KELLY, JJ.

PER CURIAM.

Defendant, Kallay Batchelor, appeals as of right his jury conviction of first-degree premeditated murder, MCL 750.316(1)(a), for which he was sentenced to life in prison without the possibility of parole. There are no errors warranting relief, so we affirm.

## I. BASIC FACTS

The jury convicted Batchelor of murdering his estranged wife, Heather Batchelor, by stabbing her at her home during the early morning hours of September 3, 2014. Batchelor and the victim were still married at the time of the victim's death, but they were living apart and the victim had informed Batchelor that she wanted a divorce. The prosecutor's theory of the case was that Batchelor was motivated by his jealousy of the victim's relationship with another man, and that Batchelor killed the victim after entering her home without permission during the night of September 2-3. The defense theory was that the victim voluntarily invited Batchelor inside her home, that the victim later attacked Batchelor with a knife, and that Batchelor acted in self-defense.

## II. OPINION TESTIMONY

Batchelor first argues that he was denied a fair trial by the introduction of his recorded police interview, which included several statements by two investigating officers, Detective Todd Chouinard and Detective Sergeant Anthony Laplant, in which the officers questioned the credibility of several of Batchelor's statements during the interview. Batchelor also challenges several statements made by the officers during their testimony at trial. Batchelor argues that the challenged statements constituted improper commentary on his credibility and improper opinion evidence of his guilt.

-1-

Initially, any claim of error relating to the officers' statements in the recorded interview has been waived. Batchelor's lawyer stipulated to the introduction of the video at trial, and the record indicates that Batchelor's lawyer and the prosecutor were actively involved in discussing the evidence before trial and had agreed on which portions could be admitted and which portions should be redacted. Batchelor's lawyer's actions indicate more than forfeiture of an issue by failing to assert a right in a timely manner. *People v Carter*, 462 Mich 206, 219; 612 NW2d 144 (2000); *People v Dobek*, 274 Mich App 58, 65; 732 NW2d 546 (2007). Instead, Batchelor's lawyer intentionally waived a challenge to the admission of the video evidence by "clearly express[ing] satisfaction" with its introduction. *Carter*, 462 Mich at 219; see also *People v Vaughn*, 491 Mich 642, 663; 821 NW2d 288 (2012). And because this question involves an evidentiary matter and a defense lawyer "has full authority to manage the conduct of the trial and to decide matters of trial strategy, . . . waiver could be effected by" his actions. *Carter*, 462 Mich at 218-219. Batchelor's lawyer's waiver extinguished any error, leaving nothing to review. *Vaughn*, 491 Mich at 663.

Even if we were to consider this issue, however, Batchelor would not be entitled to relief. This Court reviews unpreserved claims for plain error affecting a defendant's substantial rights. *People v Roscoe*, 303 Mich App 633, 648; 846 NW2d 402 (2014). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). In order to show that a defendant's substantial rights were affected, there must be "a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*.

Batchelor correctly observes that a witness generally is not permitted to offer an opinion on the credibility of another person while testifying at trial. See *People v Musser*, 494 Mich 337, 349; 835 NW2d 319 (2013). However, similar expressions of opinion contained in out-of-court interrogations are not prohibited and may be admitted to the extent they are relevant to their proffered purpose. *Id*. at 353-354. Such statements are admissible when necessary to provide context to a defendant's statements. *Id*. In this case, Batchelor provided several changing accounts of his whereabouts on the night of the offense and the circumstances of his contact with the victim that night. Batchelor's story repeatedly changed as the interrogating officers questioned the veracity of his statements and confronted him with inconsistencies between his statements and the physical evidence. The officers' statements were admissible to provide context for Batchelor's changing story, which ultimately led to his admission that he did in fact go to the victim's home, that he became involved in an altercation with the victim, and that the altercation led to the victim's death. Therefore, the introduction of the officers' statements did not constitute plain error.

Batchelor also argues that Chouinard and Laplant should not have been permitted to comment on the credibility of his statements in his interview during their testimony at trial. Batchelor acknowledges that there was no objection to the challenged testimony at trial, so the issue is unpreserved, *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007), and our review is limited to plain error affecting substantial rights, *Carines*, 460 Mich at 763.

Batchelor first argues that Chouinard improperly testified that Batchelor had made statements about the source of his injuries that did not seem consistent with the nature of the injuries. This includes testimony that Batchelor's alleged "burn mark" looked like a cut and that Chouinard did not believe Batchelor's claim that the scratch on his chest came from sleeping on a cot in his home because Batchelor stated that he slept on an air mattress. The challenged statements did not constitute an improper usurpation of the jury's role in determining Batchelor's credibility. Rather, they were statements about Chouinard's observations of Batchelor's injuries, and how the physical evidence, which he discussed as photographs of Batchelor's injuries were shown to the jury, compared to Batchelor's statements. Pointing out inconsistencies for the jury is not the equivalent of providing an irrelevant opinion of guilt.

Batchelor next challenges the introduction of Laplant's testimony that: (1) the autopsy revealed injuries to the victim that Batchelor had not mentioned during the interview; (2) letters written by Batchelor to the Governor in 2014 showed that he had again changed his story; and (3) text messages found on the victim's phone contradicted what Batchelor had said concerning whether Batchelor knew of the victim's affair and supported other witness testimony about whether Batchelor and the victim had been fighting. These matters also did not constitute irrelevant opinions on the ultimate issue of defendant's guilt. Instead, Laplant's explanation of how other evidence established inconsistencies and contradictions with Batchelor's story was relevant to the credibility of Batchelor's claim of self-defense.

Batchelor further claims error in the admission of various statements from Laplant concerning whether Batchelor's changing stories, as well as other evidence, such as the victim's weight loss or e-mails between her and her boyfriend, could be indicative of motive or premeditation. Similar to the challenged testimony discussed above, Laplant was not improperly commenting on Batchelor's credibility, but was testifying about the conclusions he made during his investigation, the reasons for the conclusions, and how the physical evidence supported them. Batchelor conflates Laplant's lay opinion evidence with improper commentary on Batchelor's credibility.

Batchelor also complains that Laplant testified several times about his belief that Batchelor was not telling the truth or that his statements lacked accuracy. Laplant testified that he observed Chouinard's interrogation of Batchelor and did not believe that Batchelor's story was accurate; therefore, he decided to interview Batchelor personally. However, the thrust of this testimony concerned what conclusions Laplant made during the interrogation. The admission of this testimony was not plainly erroneous. The second statement Batchelor claims was erroneous consisted of Laplant's testimony that Batchelor's story and his reenactment during the investigation did not match the wounds on the victims. This again was not improper commentary on Batchelor's credibility, but proper testimony explaining why the physical evidence did not support Batchelor's statements.

In sum, Batchelor has not shown that the comments by the investigating officers during trial were inadmissible opinions on Batchelor's credibility.[1]

## III.  DEMONSTRATIVE EVIDENCE

Batchelor next argues that the trial court erred in permitting the prosecutor to introduce as demonstrative evidence a short video of Laplant using a plastic card to enter the back door of the victim's home without using force.  A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion."  *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013).  "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes."  *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008).

Demonstrative evidence is admissible "where it may aid the fact finder in reaching a conclusion on a matter material to the case."  *People v Castillo*, 230 Mich App 442, 444; 584 NW2d 606 (1998).  "[T]he demonstrative evidence offered must satisfy traditional requirements for relevance and probative value"; it should also be made clear to the jury that the evidence is demonstrative only, and the opposing party should have ample opportunity for cross-examination.  *Id.* at 444-445.  In addition, when evidence is offered as an aid to illustrate testimony regarding issues related to the event rather than offered in an effort to recreate an event, the demonstration need not be an exact replication of the circumstances of the event.  *People v Bulmer*, 256 Mich App 33, 35; 662 NW2d 117 (2003).  Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  MRE 401.

The trial court did not abuse its discretion when it permitted the prosecutor to introduce this demonstrative evidence.  The prosecutor's theory of the case was that Batchelor entered the victim's home for the purpose of killing her.  Whether Batchelor entered the home forcefully or was let inside by the victim could be probative on the issue of premeditation.  Batchelor admitted that he entered the victim's home, but maintained that the victim let him inside and then they went to her bedroom to talk.  Testimony was presented that there were no obvious signs of

---

[1] Batchelor raises a concurrent claim of ineffective assistance of counsel.  In light of our conclusion that the video evidence and challenged testimony was admissible, we reject Batchelor's argument that his lawyer was ineffective for failing to object to this evidence.  Batchelor's lawyer was not required to make a meritless objection.  *People v Goodin*, 257 Mich App 425, 433; 668 NW2d 392 (2003).  Moreover, Batchelor cannot establish that he was prejudiced by the admission of the challenged statements.  To the extent that the challenged statements could be considered improper commentary on the credibility of Batchelor's initial statements during the police interview, Batchelor's later admissions both during the interview and in his written statement that he was at the victim's house and killed her in self-defense allowed the jury to find that Batchelor's earlier statements were not truthful.  Therefore, Batchelor cannot show that, but for counsel's failure to object, the outcome of trial likely would have been different.

forced entry. The victim's aunt testified that the back door had a regular "cheap" lock on it that used a key and that the back door was locked when she let other family members into the home after discovering the victim. The aunt also stated that the front door had an inside slide lock because the front door knob did not shut like a normal door and that she had let the officers in the front door when they arrived. Laplant testified that Batchelor had plastic credit cards when he emptied his pockets during the interview.

Batchelor did not object to Laplant's testimony that he had observed that the type of lock at the victim's home could be "easily defeated with a plastic card." The demonstrative video was related to evidence in the case, and it validated what Laplant described in his testimony about the possibility of using a credit card to enter the victim's home without leaving signs of a forced entry. The jury was clearly advised by the prosecutor and the court that the demonstration was only a demonstration about a possible method of entry into the home, and they were informed that it was not a reenactment of what was known to have happened. Given the evidence about the type of lock in the victim's home, Batchelor's possession of plastic credit cards in his pocket when he was interviewed, and how the credit cards could be used to defeat the lock at the victim's home, the demonstration was relevant to show that Batchelor could have entered the victim's home without leaving signs of forced entry, and thus refute the theory that the victim let Batchelor into the home voluntarily. It also illustrated Laplant's testimony regarding how a credit card could be used to defeat the lock at the victim's home. Therefore, the evidence was admissible. See *Bulmer*, 256 Mich App at 35; *Castillo*, 230 Mich App at 444.

With respect to Batchelor's additional argument that the demonstration was not "scientifically tested or sound" and that Laplant was not qualified as an expert witness, Batchelor's argument is without merit. While *Bulmer* discusses demonstrative evidence connected to expert witnesses in those cases, nothing in its analysis limits the admissibility of this type of evidence to support expert testimony. *Bulmer*, 256 Mich App at 35. A lay witness must have "personal knowledge of the matter" to which he testifies, and evidence to prove personal knowledge may consist of the testimony of the witness himself. MRE 602. Furthermore, a lay witness may give an opinion or make inferences on a matter if it is "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of [his] testimony or the determination of a fact in issue." MRE 701; *People v Daniel*, 207 Mich App 47, 57; 523 NW2d 830 (1994). Laplant had personal knowledge of the credit card technique for defeating a particular type of lock and he testified that he went to the victim's home and personally observed the type of lock. His testimony that a credit card could be used to defeat that type of lock was rationally based on his perception of the lock he observed on the door, and the demonstrative video was helpful to explain to the jury how a person could enter the home without damaging it. This falls within the purview of proper lay witness testimony.

IV. EXPERT OPINION TESTIMONY

Batchelor also argues that the trial court erred when it permitted the prosecutor to present unqualified and inadmissible expert testimony from a number of witnesses. We review each challenge in turn.

Batchelor first claims that the trial court erred when it permitted a witness to offer an opinion regarding whether the victim's wounds appeared to be self-inflicted. The witness testified that she was an examiner for the Delta County Medical Examiner's office, and she was called to the scene to perform a death scene investigation. Contrary to what Batchelor argues, the trial court found that the witness was qualified to provide the challenged testimony because it was related to her expertise as a death scene investigator and she had been assigned to investigate the victim's death. Therefore, the witness properly could provide an opinion whether the victim's wounds appeared to be self-inflicted. See MRE 702 ("a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify . . . in the form of an opinion or otherwise if . . . the testimony is based on sufficient facts or data . . . ."). Batchelor's claim of error is without merit.

Batchelor next argues that Police Officer John Gudwer was improperly allowed to testify that when he responded to the crime scene, the victim was deceased and the circumstances indicated that she appeared to be the victim of foul play in an apparent homicide. Batchelor objected to this testimony at trial on the ground that it was speculative, but he did not argue that it was improper opinion testimony. Because an objection to evidence on one ground is insufficient to preserve an appellate attack on a different ground, this claim is unpreserved. *People v Asevedo*, 217 Mich App 393, 398; 551 NW2d 478 (1996). We review an unpreserved claim of evidentiary error for plain error affecting defendant's substantial rights. *Roscoe*, 303 Mich App at 648. There was no plain error because the challenged testimony was permissible lay opinion testimony under MRE 701. See *Daniel*, 207 Mich App at 57. Officer Gudwer personally observed the victim's body. He testified that the victim was lying on the floor, with a knife handle in her hand and a knife blade in her neck. He further stated that the position of the knife blade did not match the position of the handle the way she was holding it. His opinions that the victim was dead and there appeared to have been foul play such that she was the victim of a homicide were rationally based on his observations. Moreover, his testimony was relevant to the manner of the victim's death, which was a central issue in the case. In addition, as the trial court observed, he was careful to preface his opinion testimony by stating what the circumstances "appeared to be," and he explained the basis for his opinions. Thus, the jury remained free to draw its own conclusions about the evidence. Accordingly, the testimony was admissible.

Batchelor also challenges Detective Laplant's testimony that, based on his experience in investigating cases of domestic violence, Batchelor's injuries were consistent with a victim trying to ward off an attack. Batchelor acknowledges that there was no objection to this testimony at trial, leaving this claim unpreserved and limiting out review to plain error affecting defendant's substantial rights. *Roscoe*, 303 Mich App at 648. Laplant's testimony was permissible lay opinion testimony because it was rationally based on his personal observations of Batchelor's injuries, and the testimony was helpful to a clear understanding of Batchelor's injuries and the credibility of Batchelor's account of how he received the injuries. See *Daniel*, 207 Mich App at 57. Moreover, to the extent that Laplant's opinion testimony could be more properly characterized as expert opinion evidence, Batchelor cannot show that it affected his substantial rights because (1) Laplant testified that he had experience investigating cases of domestic violence and MRE 702 recognizes that a witness may be qualified as an expert based on experience, and (2) the jury had already watched Batchelor's video interview in which Batchelor admitted that the wounds were in fact defensive.

-6-

Batchelor's related claim of ineffective assistance of counsel is also without merit. As previously discussed, both the medical examiner's testimony and the testimony of Officer Gudwer were admissible under MRE 701 and MRE 702. Batchelor's lawyer cannot be faulted for failing to make a futile objection to this testimony. *People v Goodin*, 257 Mich App 425, 433; 668 NW2d 392 (2003). Laplant's testimony was also properly admitted and, even if we were to conclude that the testimony was improper, Batchelor was not prejudiced by his lawyer's failure to object. During closing argument, Batchelor's lawyer specifically used Laplant's testimony about the fact that Batchelor's wounds appeared to be defensive to argue that it supported the defense theory that the victim attacked Batchelor and that Batchelor acted in self-defense. It was reasonable trial strategy to refrain from objecting to testimony that would later be used to support the defense theory of the case. That a strategy does not work does not constitute ineffective assistance. *People v Stewart (On Remand)*, 219 Mich App 38, 42; 555 NW2d 715 (1996).

Affirmed.

/s/ Michael J. Talbot
/s/ Jane M. Beckering
/s/ Michael J. Kelly