*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

AARON JOSHUA-JOHN YOUNG,

Defendant-Appellant.

UNPUBLISHED
January 17, 2019

No. 341946
Ottawa Circuit Court
LC No. 17-040870-FC

Before: MARKEY, P.J., and M. J. KELLY and SWARTZLE, JJ.

PER CURIAM.

Defendant, Aaron Young, appeals as of right his jury convictions of second-degree murder, MCL 750.317, possession of a firearm when committing a felony (felony-firearm), MCL 750.227b, and carrying a concealed weapon, MCL 750.227. Because Young's convictions are supported by sufficient evidence, we affirm.

## I. BASIC FACTS

On September 11, 2016, Young shot and killed Anthony Lamb in the parking lot of the Hookah Lounge in Holland, Michigan. The prosecution presented evidence that Young and a group of his friends had an altercation with Lamb and a group of his friends and associates and that Young fired his gun first. In contrast, Young claimed that he had killed Lamb in self-defense. Young testified that he only fired his gun after Demetrius "Meech" Viney pulled a gun and pointed it at Young's cousin. He stated that he jumped out of the way and pulled his gun from his waistband. He added that by the time he drew his gun, Meech had already fired two shots. He stated that Lamb then grabbed the gun from Meech and fired it at him, so he ducked and fired two more shots. He testified that he saw Lamb fall to the ground with his gun and another individual picked it up and fired a shot. Young retuned fire, but his gun malfunctioned so he fled the area. The jury rejected Young's defense and convicted him as charged.

## II. SUFFICIENCY OF THE EVIDENCE

## A. STANDARD OF REVIEW

Young argues that there was insufficient evidence to support his convictions of second-degree murder and felony-firearm because he was acting in lawful self-defense when he shot and killed Lamb. Challenges to the sufficiency of the evidence are reviewed de novo on appeal. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). "[W]hen determining whether sufficient evidence has been presented to sustain a conviction, a court must view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). Circumstantial evidence, including reasonable inferences arising from the evidence, is sufficient proof of the elements of a crime. *People v Henderson*, 306 Mich App 1, 9; 854 NW2d 234 (2014). "This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

## B. ANALYSIS

The elements of second-degree murder require the prosecution to prove beyond a reasonable doubt "(1) a death, (2) caused by an act of the defendant, (3) absent circumstances of justification, excuse, or mitigation, (4) done with an intent to kill, an intent to inflict great bodily harm, or an intent to create a very high risk of death with the knowledge that the act probably will cause death or great bodily harm." *People v Bailey*, 451 Mich 657, 669; 549 NW2d 325 (1996) (quotation marks and citation omitted), amended 453 Mich 1204 (1996). A killing is justified if the defendant was acting in self-defense. See *People v Dupree*, 486 Mich 693, 707; 788 NW2d 399 (2010). "Once a defendant raises the issue of self-defense and satisfies the initial burden of producing some evidence from which a jury could conclude that the elements necessary to establish a prima facie defense of self-defense exist, the prosecution must exclude the possibility of self-defense beyond a reasonable doubt." *People v Stevens*, 306 Mich App 620, 630; 858 NW2d 98 (2014) (quotation marks and citation omitted). A defendant acts in lawful self-defense if he or she "honestly and reasonably believes that the use of that force is necessary to defend himself or herself or another individual from the imminent unlawful use of force by another individual." MCL 780.972. A defendant does not have a duty to retreat so long as the defendant "has not or is not engaged in the commission of a crime at the time he or she uses deadly force" and as long as the defendant is in a location where he or she "has the legal right to be . . . ." *Id*.

Here, Young contends that the prosecution could not disprove self-defense. In support, he asserts that numerous witnesses testified that they heard shots, but saw nothing, or that they heard shots *before* Young drew his gun. He also directs us to testimony from a police detective, who explained that a participant in the shooting, Levell Turner, reported that Meech fired the first shot and that after Lamb was shot Turner picked up the gun and shot at Young and Young's cousin. Additionally, Young relies on testimony that he told the driver of his vehicle that he pulled his gun to protect his cousin after a gun was pointed at his cousin's head, that he told a police detective that he was acting in self-defense after Meech pulled his gun, that he was aware before the shooting that Meech had a gun and was willing to use it, and that Meech later pulled his gun and fired two shots at Young's cousin. Young testified that he was in the line of fire and was afraid that Meech was going to shoot at him next, so he drew his gun and fired two shots into the air, but Lamb grabbed the gun from Meech and started firing at him so he returned fire,

-2-

hitting Lamb in the process. Young further relies on his testimony explaining that he left the state because he feared retaliation from Lamb's associates.

Yet, although the testimony referenced by Young certainly supports his claim that he was acting in self-defense, it ignores the evidence supporting the prosecution's case. Here, one eyewitness to the shooting testified that he was absolutely certain that Lamb's group did not initiate the shooting and the first shots instead came from the direction of Young's location. Although the witness's testimony was impeached on cross-examination, the jury was nevertheless free to credit his testimony. See *People v Russell*, 297 Mich App 707, 721; 825 NW2d 623 (2013). In addition, other witnesses testified that the first shots sounded like they came from a toy gun and the next shots sounded louder. A ballistics expert testified that the shots fired by a revolver—like the weapon Young used—would be noticeably softer than the shots fired by the 9 millimeter pistol recovered at the scene. Based on that evidence, the jury could infer that Young, not Meech was the initial aggressor and that when he used deadly force, he did not have an honest and reasonable belief that the use of deadly force was necessary to prevent imminent death or great bodily harm to himself or his cousin. Moreover, evidence of flight is admissible to support an inference of a consciousness of guilt. *People v Goodin*, 257 Mich App 425, 432; 668 NW2d 392 (2003). Here, immediately after the shooting Young fled the scene, disposed of the shell casings by throwing them out the window, and discarded the revolver in a field. Within a few days of the shooting, he travelled to Chicago, where he stayed for approximately nine days before continuing to Tennessee. Therefore, viewing the evidence in the light most favorable to the prosecution, there is sufficient evidence to support the jury's verdict.[1]

Affirmed.

/s/ Jane E. Markey
/s/ Michael J. Kelly
/s/ Brock A. Swartzle

---

[1] Young also suggests that the jury was confused about whether he had a duty to retreat. In support, he explains that during deliberations the jury sent a note asking about when a person's duty to retreat first starts. The judge reread the standard jury instruction, which—as Young acknowledges—accurately states the law on self-defense. Although Young argues that, despite being so instructed, the jury nevertheless failed to understand the law, he does not support his argument without anything beyond mere speculation, which is insufficient to overcome the presumption that jurors follow their instructions. *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998). Furthermore, we note that after the court reread the self-defense jury instruction, Young's lawyer expressly stated that he had no objections with how the court handled the instructions. See *People v Thorne*, 322 Mich App 340, 346; 912 NW2d 560 (2017) (observing that the defendant waived review of the trial court's jury instructions where his lawyer "clearly expressed satisfaction with" the instructions).