# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JAMELL JOSHUA-ALLEER BARBER,

        Defendant-Appellant.

UNPUBLISHED
April 17, 2018

No. 337287
Ingham Circuit Court
LC No. 16-000008-FC

Before: O'BRIEN, P.J., and CAVANAGH and STEPHENS, JJ.

PER CURIAM.

Defendant appeals as of right his convictions following a jury trial for armed robbery, MCL 750.529, first-degree home invasion, MCL 750.110a(2), and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b(1). The trial court sentenced defendant to 12½ to 25 years' imprisonment for armed robbery, 10 to 20 years for home invasion, and 2 years for felony firearm. The trial court ordered defendant to serve his felony-firearm sentence first, consecutive to his other sentences, with 434 days credit for time served, and then serve his sentences for armed robbery and home invasion concurrently. We affirm.

On the morning of November 5, 2015, defendant and a group of young males planned and executed a coordinated attack on an older man in an attempt to rob the man's house. After surveilling the man's house, two members of the group feigned a forced entry at the front door knowing that it would lure the man outside by the side entrance. A three member group, including defendant, lay in wait for the man at the side door and viciously attacked him once he emerged. The man fought back and retreated into his house, dragging the three attackers in with him. The man broke free and dashed to his bed in the living room. As he did so, one of the perpetrators pulled out a gun and shot at the man. The shots missed, and the man was able to retrieve his gun from under his pillow, turn, and return fire. The man's shots struck each of the three intruders. One was shot in the hand, one in his shoulder, and defendant was shot through his right leg. The perpetrators ran off into a nearby wooded area, leaving a trail of blood. Police eventually apprehended the group.

On appeal, defendant first argues that his trial counsel provided him ineffective assistance in several ways. We disagree. Whether a defendant was deprived of the effective assistance of counsel presents a mixed question of fact and constitutional law. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). Findings of fact, if any, are reviewed for clear error, while legal

-1-

questions are reviewed de novo. *Id*. Although defendant preserved the issue by filing a motion for remand in this Court, because this Court denied the motion,[1] and no evidentiary hearing was held, our review is limited to mistakes apparent on the record. See *People v Seals*, 285 Mich App 1, 19-20; 776 NW2d 314 (2009).

To prevail on a claim of ineffective assistance, a defendant must show that "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001) (citation and quotation marks omitted). Further, defendant "has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel." *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). Effective assistance of counsel is presumed, and defendant bears a heavy burden of proving otherwise. *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004).

Defendant first argues that defense counsel provided ineffective assistance by failing to effectively communicate with him, resulting in counsel's failure to call witnesses on defendant's behalf. "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy." *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). "This Court does not second-guess counsel on matters of trial strategy, nor does it assess counsel's competence with the benefit of hindsight." *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012). "A particular strategy does not constitute ineffective assistance of counsel simply because it does not work." *People v Matuszak*, 263 Mich App 42, 61; 687 NW2d 342 (2004).

Defendant's contention that defense counsel failed to communicate with him lacks support in the record. The record reveals that defendant had contact and communicated with defense counsel during trial. The record also indicates that defense counsel sought and obtained funds from the trial court to hire a private investigator to assist in preparation of defendant's defense. Defendant's affidavit attached to his motion to remand filed in this Court also indicates that defendant communicated with his trial counsel before trial. The record does not establish that defense counsel failed to effectively communicate with defendant.

In his brief on appeal, his Standard 4 brief,[2] his motion for remand, and his affidavit attached to his motion, defendant argued that defense counsel's failure to communicate with him led to defense counsel not calling favorable witnesses on defendant's behalf. However, in none of those filings did defendant identify a single witness whom defense counsel should have but failed to call to testify. Nor does defendant provide what the unidentified witnesses' testimonies would have been or how their testimonies would have established, or even assisted, a defense.

---

[1] *People v Barber*, unpublished order of the Court of Appeals, entered August 21, 2017 (Docket No. 337287).

[2] Michigan Supreme Court Administrative Order 2004–6, Standard 4.

The "failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense." *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004). Defendant fails to specify what defense, if any, the purported failure to call these unidentified witnesses deprived him of. Accordingly, defendant has failed to establish any factual predicate for his claim of ineffective assistance in this regard. *Hoag*, 460 Mich at 6.

Defendant also argues that defense counsel failed to effectively cross-examine one of the perpetrators of the crimes in this case who testified against defendant. Defendant contends that the witness's preliminary examination testimony contradicted his trial testimony and that his trial testimony was false and undermined defendant's mere presence defense. Decisions whether and how to cross-examine witnesses are matters of trial strategy. *People v Dunigan*, 299 Mich App 579, 589-590; 831 NW2d 243 (2013).

At trial, the subject witness testified that, while the group was in the car before committing the crimes in this case, two perpetrators in the group gave orders about how the group was going to conduct the robbery. The record indicates that during cross-examination, defense counsel attempted to elicit testimony that the perpetrators of the crime actually did not discuss anything as they rode to the location of the robbery, which was what the witness testified to during the preliminary examination. The witness did not recall his previous testimony, and defense counsel initially sought to refresh the witness's recollection, but then simply had the witness read aloud the preliminary examination question and answer in which he testified that he did not hear defendant say anything during the commission of the crimes. Defense counsel next elicited an admission from the witness that defendant did not have a gun. The prosecution followed up by having the witness reaffirm his testimony that two others in the group gave orders about how the group was going to conduct the robbery.

Defendant argues that defense counsel's failure to impeach the witness with his prior statement that no conversation occurred in the car before the crime deprived defendant of a mere presence defense because it evidenced that defendant was aware of the group's intent to commit a crime. However, a review of the record establishes ample evidence to refute this claim. The subject witness's testimonies at the preliminary examination and at trial placed defendant at the scene and provided that defendant actively participated in the crimes. The witness's trial testimony clarified that, once the perpetrators of the robbery arrived at the location, five members of the group first surveilled the victim's house from the back, then they all returned to the vehicle and split into two groups that carried out separate and distinct assignments to commit the robbery. The evidence established that defendant went with two others around the back of the house. The evidence indicated that the group planned and coordinated an attack on the victim. The witness's testimonies at the preliminary examination and at defendant's trial did not vary on these relevant facts. Further, the victim testified that attackers hit him from behind when he stepped out of his house to investigate the attempted forced entry at the front door. The three attackers entered his house, whereupon the victim shot defendant while defendant was inside the house. The police found and collected defendant's blood outside the house and from the trail into the woods.

We believe that the totality of the evidence presented at trial established that planning and coordination preceded the crimes and that defendant played the part assigned to him, regardless of whether the planning occurred in the vehicle or outside it after they arrived. Moreover,

defense counsel's cross-examination of the witness, albeit not a particularly destructive cross-examination, elicited two factual clarifications to defendant's benefit. Even if defense counsel had exposed in greater detail contradictions in the witness's testimony, the effectiveness of such cross-examination would have been negligible given the overwhelmingly evidence, other than the witness's testimony, that worked against defendant's mere presence defense. Therefore, there is not a reasonable probability that the outcome would have been different had defense counsel impeached the witness with his preliminary examination testimony.[3] *Trakhtenberg*, 493 Mich at 51.

In his Standard 4 brief, defendant argues that defense counsel provided ineffective assistance by not objecting to the prosecution's aiding-and-abetting theory. The evidence at trial, however, supported defendant's convictions for aiding and abetting first-degree home invasion and armed robbery. MCL 767.39 provides:

> Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense.

Three elements are required to convict a defendant under an aiding-and-abetting theory of prosecution:

> (1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that [the defendant] gave aid and encouragement. [*People v Robinson*, 475 Mich 1, 6; 715 NW2d 44 (2006) (citation and quotation marks omitted).]

This Court clarified in *People v Pinkney*, 316 Mich App 450, 472; 891 NW2d 891 (2016), that the aiding-and-abetting issue may be put before the jury as long as evidence existed that tended to establish that more than one person committed the crime. In this case, defendant cannot reasonably dispute that the group worked together to commit the crimes. The prosecution presented overwhelming evidence that defendant and two others attacked the victim, entered his house to rob him, and then fled after being shot. The record unequivocally established that defendant performed acts and actively assisted the others regarding the commission of the crimes and the group all intended to commit the crimes. Had defense counsel objected to the prosecution's use of the aiding-and-abetting theory, such objection would have been futile. Defense counsel was "not required to make a meritless motion or a futile objection." *People v*

---

[3] Defendant also argues in his Standard 4 brief that defense counsel should have impeached the witness with his criminal history, but does not provide any evidence of the witness's criminal history or show how it was relevant and admissible under MRE 609. Therefore, defendant failed to establish the factual predicate of his claim. *Hoag*, 460 Mich at 6.

*Goodin*, 257 Mich App 425, 433; 668 NW2d 392 (2003). Counsel's performance in this regard did not fall below an objective standard of reasonableness. *Trakhtenberg*, 493 Mich at 51.

Defendant also argues in his Standard 4 brief that defense counsel provided ineffective assistance by not moving for a directed verdict. Defendant relies on the fact that no gun was found and that the victim did not identify defendant as one of his attackers. Defendant ignores the substantial evidence that put defendant at the scene of the crime and established that he actively participated in the commission of the armed robbery and home invasion, got shot, and left a blood trail to his location in the woods. A motion for a directed verdict would have been futile. Defense counsel was "not required to make a meritless motion or a futile objection." *Goodin*, 257 Mich App at 433.

Defendant next argues in his Standard 4 brief that defense counsel provided ineffective assistance by agreeing to suppress defendant's statements in exchange for defendant not testifying at his trial. Defendant mischaracterizes the parties' agreement regarding use of his statements to police officers. Defense counsel moved to suppress defendant's statements on the ground that he was not provided a *Miranda*[4] warning by police before he made statements to them. The record does not indicate when those statements were made or their content. The record also does not indicate why defense counsel agreed to entry of the stipulated order that required the prosecution to refrain from using defendant's statements in its case in chief but potentially permitted use of such statements if defendant chose to testify at trial. Because the trial court record lacks clarification and provides no rationale, we decline speculating regarding defense counsel's reason for the stipulation. We assume, however, that defense counsel faced a difficult decision regarding trial strategy. Further, defendant had the opportunity to testify on his own behalf, but he knowingly and voluntarily waived that right at trial.[5] "This Court does not second-guess counsel on matters of trial strategy, nor does it assess counsel's competence with the benefit of hindsight." *Russell*, 297 Mich App at 716. Based on the record, there is no basis to conclude that counsel's performance in this regard was objectively unreasonable. *Trakhtenberg*, 493 Mich at 51.

In his Standard 4 brief, defendant argues that defense counsel also provided ineffective assistance by not objecting to the prosecution's calling a paramedic as a witness who authored a Lansing Fire Department report. Defendant suggests that defense counsel and defendant had no knowledge of the witness's testimony in advance of trial. The trial court record, however, indicates that the prosecution identified the witness long before trial in its witness list and specified that the witness was a member of the Lansing Fire Department. Further, the record reflects that, before the second day of defendant's trial and before any witness testified or evidence had been presented, the prosecution advised the trial court and defense counsel that the witness would testify and that the report he authored might be offered as a trial exhibit in redacted form if necessary to exclude any statements made by defendant to police before

---

[4] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed2d 694 (1966).

[5] There is no support in the record for defendant's contention that counsel agreed to suppress defendant's statements in exchange for defendant not testifying.

defendant received a *Miranda* warning.[6] The prosecution explained that it lacked certainty about the content of the witness's testimony and was taking precautions to not elicit testimony of improperly obtained admissions by defendant. When the witness eventually testified, he stated that defendant told him that he got shot while in the woods, and the jury was left to determine the veracity of defendant's exculpatory statement.[7] Defendant has not adequately explained the grounds on which defense counsel should have objected to the witness's testimony, nor how the outcome would have been different had the witness not testified. Accordingly, defendant has failed to establish ineffective assistance on this ground. *Trakhtenberg*, 493 Mich at 51.

Next, defendant argues that he is entitled to resentencing because the trial court made a sentencing-guidelines scoring error with regard to offense variable (OV) 10 that resulted in a disproportionate sentence. We disagree.

Initially, we note that defendant's challenge to OV 10 is waived. Defendant's OV 10 score was originally calculated at zero points. At sentencing, the prosecution argued that OV 10 should have been scored at 15 points, and the following exchange between defense counsel and the trial court followed:

> *The Court.* Mr. Kamar, any objection?
>
> *Mr. Kamar* [defense counsel]. Well, the Court heard the facts, Your Honor. So I'm not going to say one thing one way or the other. So we would agree based upon the facts.
>
> *The Court.* That it would be scored 15 points?
>
> *Mr. Kamar.* Yes. Elicited at trial. I mean, how can I disagree?
>
> *The Court.* All right. So OV 10 will be scored at 15 points. Mr. Roth?
>
> *Mr. Roth* [the prosecutor]. Thank you, Your Honor. We have no other corrections. That would make our total OV 85, which is Level V, and it would make our new range 135 to 225.

---

[6] Defendant alludes to something exculpatory in the report that was withheld, but defendant fails to mention what that might have been or how it may have served his defense. Defendant also suggests, without any support in the record, that the report was not available to defense counsel, and that defense counsel was ineffective for not failing to move for an adjournment to review the document and present the allegedly exculpatory information. Because defendant has not provided a factual basis for either assertion, defendant failed to establish the factual predicate of both claims. *Hoag*, 460 Mich at 6.

[7] Defendant asserts that this testimony "was used to discredit defendant's character and prejudice the jury, making defendant seem dishonest." However, the jury was free to believe that defendant was telling the truth in his statement to the witness. We see nothing inherent in this testimony that reflected defendant's character or made "defendant seem dishonest."

*The Court.* Are you in agreement with that calculation, Mr. Kamar?

*Mr. Kamar.* Yes, sir.

"[W]aiver is the intentional relinquishment or abandonment of a known right." *People v Carines*, 460 Mich 750, 763 n 7; 597 NW2d 130 (1999) (citation and quotation marks omitted). "A defendant may not waive objection to an issue before the trial court and then raise it as an error before this Court." *People v Fetterley*, 229 Mich App 511, 520; 583 NW2d 199 (1998). Here, defense counsel waived any objection to the trial court's scoring of OV 10 by stating that "we would agree based upon the facts." But not only did defense counsel waive objection, he explicitly agreed that the scoring was proper. On these facts, this issue is waived. Defendant's waiver extinguished any error. See *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000).

However, even were defendant's challenge to his OV scoring not waived, defendant's failure to object to the trial court's OV scoring left the issue unpreserved on appeal. See *People v Ackah-Essien*, 311 Mich App 13, 35-36; 874 NW2d 172 (2015). Generally, we review for clear error the trial court's factual determinations used for sentencing under the sentencing guidelines, and such facts must be supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). However, unpreserved scoring errors are reviewed for plain error affecting substantial rights. *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015).

Defendant argues that the trial court should not have assessed any points for OV 10 because defendant did not engage in any predatory conduct, but merely happened to be present when the crimes were committed. Defendant's arguments lack merit.

When calculating the sentencing guidelines range, a trial court may consider all record evidence, including the contents of a PSIR, plea admissions, and testimony presented at a preliminary examination. *People v Johnson*, 298 Mich App 128, 131; 826 NW2d 170 (2012). A PSIR "is presumed to be accurate and may be relied on by the trial court unless effectively challenged by the defendant." *People v Callon*, 256 Mich App 312, 334; 662 NW2d 501 (2003).

OV 10 must be scored for all felony offenses except those involving controlled substances. MCL 777.22. OV 10 applies when a defendant exploited a vulnerable victim. MCL 777.40 defines OV 10 scoring as follows:

> (1)  Offense variable 10 is exploitation of a vulnerable victim.  Score offense variable 10 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:
>
> (a)  Predatory conduct was involved............................................15 points
>
> (b)   The offender exploited a victim's physical disability, mental disability, youth or agedness, or a domestic relationship, or the offender abused his or her authority status ......................................................10 points

(c) The offender exploited a victim by his or her difference in size or strength, or both, or exploited a victim who was intoxicated, under the influence of drugs, asleep, or unconscious................................................................5 points

(d) The offender did not exploit a victim's vulnerability................0 points

(2) The mere existence of 1 or more factors described in subsection (1) does not automatically equate with victim vulnerability.

(3) As used in this section:

(a) "Predatory conduct" means preoffense conduct directed at a victim, or a law enforcement officer posing as a potential victim, for the primary purpose of victimization.

(b) "Exploit" means to manipulate a victim for selfish or unethical purposes.

(c) "Vulnerability" means the readily apparent susceptibility of a victim to injury, physical restraint, persuasion, or temptation.

In *People v Huston*, 489 Mich 451, 464-466; 802 NW2d 261 (2011), the Michigan Supreme Court considered what conduct warrants OV 10 scoring. The Michigan Supreme Court explained:

We read the statute as contemplating vulnerabilities that may arise not only out of a victim's characteristics, but also out of a victim's relationships or circumstances.

MCL 777.40(1)(b) and (c) explicitly define characteristics, relationships, and circumstances that may make a victim susceptible to injury, physical restraint, persuasion, or temptation. The specified factors listed in subdivisions (b) and (c) relate to the inherent characteristics of the victim, as well as the victim's relationships and circumstances.

Using the statutory language as guidance, *Cannon* listed factors to be considered by a sentencing court when determining whether a victim was vulnerable. [*People v Cannon*, 481 Mich 152, 158-159; 749 NW2d 257 (2008)]. Those factors include the expressly listed characteristics, relationships, and circumstances identified in subdivisions (b) and (c), which are:

(1) the victim's physical disability, (2) the victim's mental disability, (3) the victim's youth or agedness, (4) the existence of a domestic relationship, (5) whether the offender abused his or her authority status, (6) whether the offender exploited a victim by his or her difference in size or strength or both, (7) whether the victim was intoxicated or under the influence of drugs, or (8) whether the victim was asleep or unconscious. [*Id.*]

-8-

Both *Cannon* and the express language of MCL 777.40(2) instruct that the mere existence of one of the listed factors does not automatically render the victim "vulnerable" for purposes of scoring OV 10. *Id*. at 159, 749 NW2d 257.

In contrast to subdivisions (b) and (c), subdivision (a) does not list any specific characteristics, relationships, or circumstances of the victim. Rather, that subdivision merely requires that "[p]redatory conduct was involved" in order to assess 15 points for OV 10. MCL 777.40(1)(a). Recognizing this notable distinction, *Cannon* explained that the factors it enumerated were not meant as an exhaustive list for purposes of finding "vulnerability." *Cannon*, 481 Mich at 158 n. 11, 749 NW2d 257. Instead, *Cannon* clarified that

> [t]he absence of one of these factors does not preclude a finding of victim vulnerability when determining whether it is appropriate to assess 15 points for predatory conduct. Rather, the evidence must show merely that it was readily apparent that the victim was susceptible to injury, physical restraint, persuasion, or temptation. [*Id*.]

Accordingly, to assess 15 points for OV 10, a court must find that an offender engaged in predatory conduct and exploited a vulnerable victim, using only the statutory definition of "vulnerability." [*Huston*, 489 Mich at 464-466 (some alterations in original).]

With regard to a victim's "vulnerability," *Huston* held that a "defendant's 'predatory conduct,' by that conduct alone (*eo ipso*), can create or enhance a victim's 'vulnerability.'" *Id*. at 454. In that case, the Michigan Supreme Court upheld an assessment of 15 points for OV 10 because the evidence established that before the "defendant and his cohort robbed the victim, they were lying in wait, armed . . . and hidden from the victim, who was by herself at night in an otherwise empty parking lot." *Id*. at 454-455.

In the case now before us, the evidence established that defendant and his cohorts targeted the victim because of his age. A witness at trial testified that two members of the group told the others that the victim was old and that they could take him by force. The evidence established that the group devised and carried out a plan to attack the victim by surprise and overwhelm him. While two members went to the front door to distract the victim and draw him out of the side door, defendant and two others went to the back of the house to lay in wait for the victim to come out. Circumstantial evidence established that one of the perpetrators with defendant carried and fired a handgun. The evidence established that once the victim stepped outside of his house, defendant and his cohorts viciously attacked him from behind. Accordingly, because ample evidence established that defendant and his cohorts exploited the

victim's vulnerability and acted in a predatory manner against him, the trial court's scoring of OV 10 at 15 points was not improper. See MCL 770.40(1)(a); *Huston*, 489 Mich 454-455.[8]

Lastly, in his Standard 4 brief, defendant claims that the prosecution committed prosecutorial misconduct on several occasions during defendant's trial. We disagree. To preserve an issue of prosecutorial misconduct for appeal, the defendant must contemporaneously object and request a curative instruction, or move for a mistrial. *People v Alter*, 255 Mich App 194, 205; 659 NW2d 667 (2003). In this case, defendant did not contemporaneously object to the prosecutor's calling its witnesses to testify, never raised any issues regarding their trial testimony, never requested any curative instructions, and never moved for a mistrial. Therefore, defendant's challenges to the prosecutor's conduct are not preserved.

Generally, claims of prosecutorial misconduct are reviewed de novo to "determine whether defendant was denied a fair and impartial trial." *People v Cox*, 268 Mich App 440, 450-451; 709 NW2d 152 (2005). However, unpreserved instances of prosecutorial misconduct are reviewed for plain error. *People v Unger (On Remand)*, 278 Mich App 210, 235; 749 NW2d 272 (2008). "Issues of prosecutorial misconduct are decided case by case, with the reviewing court examining the pertinent portion of the record and evaluating the prosecutor's remarks in context." *People v Noble*, 238 Mich App 647, 660; 608 NW2d 123 (1999). Error requiring reversal cannot be found where a curative instruction would have "alleviated any prejudicial effect." *Callon*, 256 Mich App at 329-330. "Curative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements . . . and jurors are presumed to follow their instructions." *Unger*, 278 Mich App at 235.

In his Standard 4 brief, defendant contends that the prosecution committed prosecutorial misconduct by eliciting testimony from the perpetrator who testified against him at trial that was different from the witness's preliminary testimony. Defendant contends that the prosecutor committed misconduct by knowingly allowing the witness to perjure himself. Defendant's argument lacks merit.

---

[8] Defendant also claims that his sentence was disproportionate. Because the trial court properly scored OV 10, defendant's recommended minimum sentence sentence range was 135 months to 225 months. Defendant's sentence of 12½ year (150 months) fell within this range. "A sentence that falls within the appropriate sentencing guidelines range is presumptively proportionate." *People v Armisted*, 295 Mich App 32, 51; 811 NW2d 47 (2011); see also *People v Jackson*, 320 Mich App 514, 527; ___ NW2d ___ (2017). Because defendant does not otherwise claim that the trial court erred in scoring under the guidelines or relied on inaccurate information, this Court must affirm the sentence. See MCL 769.34(10); *People v Kimble*, 470 Mich 305, 310-311; 684 NW2d 669 (2004); see also *Jackson*, 320 Mich App at 527.

To the extent that defendant claims counsel was ineffective for not objecting to the scoring of OV 10, his challenge is without merit because defense counsel was "not required to make a meritless motion or a futile objection." *Goodin*, 257 Mich App at 433.

-10-

Perjury consists of a sworn witness making a false statement regarding any matter or thing. MCL 750.423; see also *People v Lively*, 470 Mich 248, 253-254; 680 NW2d 878 (2004). We agree that the witness's trial testimony differed from his preliminary examination testimony. During the preliminary examination, the witness testified that no discussion took place during the ride to the robbery location. At trial, the witness testified that as they drove to their destination, the group planned to rush the man who lived at the house and steal marijuana. During cross-examination at trial, defense counsel asked the witness whether he heard defendant say anything while he rode in the vehicle. The witness testified that he could not remember. On redirect examination, the witness affirmed that defendant was not the person talking about the robbery during the ride, but others gave orders about how they were going to do the robbery.

Despite the difference in testimonies, there is no basis to conclude that the witness perjured himself at trial. The record reflects that the witness was interrogated by the prosecutor in greater depth during trial and that, as a result, the witness provided more detailed information about what transpired before, during, and after the crimes were committed. The witness's trial testimony differed from his terse responses to the prosecutor's questions during the preliminary examination regarding whether discussion took place on the ride to the robbery. Although the testimonies differed, both were given under oath, and there is no basis to conclude which was true. Therefore, there is no basis to conclude that the witness to perjured himself at trial, let alone to conclude that the prosecutor knowingly allowed the witness to do so.

Defendant next argues that the prosecutor committed misconduct by committing a *Brady*[9] violation by withholding the content of the paramedic's testimony and the paramedic's report. Defendant's argument lacks merit.

Defendants have a due process right to obtain exculpatory information or evidence within the prosecutor's control that would "raise a reasonable doubt about the defendant's guilt." *People v Stanaway*, 446 Mich 643, 666; 521 NW2d 557 (1994). The prosecution, however, does not have an affirmative duty to search for evidence to aid the defendant's case. *People v Burwick*, 450 Mich 281, 289 n 10; 537 NW2d 813 (1995). The prosecution has no obligation to "secure discoverable information on behalf of defendant." *People v Bosca*, 310 Mich App 1, 29; 871 NW2d 307 (2015). The prosecution need not "assist a defendant in developing potentially exculpatory evidence." *People v Anstey*, 476 Mich 436, 461; 719 NW2d 579 (2006). Likewise, "[t]he prosecution is not required to seek and find exculpatory evidence or assist in building or supporting a defendant's case, nor is it required to negate every theory consistent with defendant's innocence." *Bosca*, 310 Mich App at 30 (citation and quotation marks omitted).

In *People v Chenault*, 495 Mich 142, 149-150, 155; 845 NW2d 731 (2014), the Michigan Supreme Court explained that, to determine whether a *Brady* violation occurred, reviewing courts should apply the three-factor test articulated in *Strickler v Greene*, 527 US 263, 281-282; 119 S Ct 1936; 144 L Ed 2d 286 (1999). Thus, this Court must determine whether (1) the prosecution suppressed evidence; (2) that was favorable to the accused; and (3) viewed in its totality, the evidence was material. *Chenault*, 495 Mich at 149-150.

---

[9] *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963).

In this case, the prosecution disclosed the paramedic as a witness well in advance of trial and identified him as a member of the Lansing Fire Department. Further, the prosecution disclosed to the trial court and defense counsel before any testimony or evidence was presented at trial that it intended to call the witness and might seek admission of the report that he authored. The prosecution advised the trial court and defense counsel that the report might be submitted in redacted form depending upon whether the reported statements made by defendant occurred during the paramedic's treatment of defendant, or if the paramedic overheard defendant make statements to police officers before he had received a *Miranda* warning. The prosecution made clear to the trial court and defense counsel that the report might be presented as evidence and that the prosecution lacked certainty about the origin of defendant's statements reported within the report. The prosecution did not withhold or suppress this evidence so that it was unavailable to defendant. The record establishes that defense counsel expressed no surprise regarding the paramedic testifying or that the report he authored would be submitted as evidence. Defense counsel expressed on the record that he essentially concurred with the representations made by the prosecution to the trial court. Under these circumstances, we conclude that the prosecution did not suppress the evidence, and defendant failed to establish the first prong of a *Brady* violation.

Defendant also argues in his Standard 4 brief that the prosecutor committed misconduct by eliciting testimony from a witness to prejudice defendant by creating the impression in jurors' minds that defendant had guilt by association due to defendant's relationship with the perpetrators of the crimes. This argument lacks merit.

The witness testified at trial that she was a friend of defendant and the other perpetrators of the crimes and that, on the morning before the crime, around 1:00 a.m., the group gathered at her house. They talked together for a while and then the boys left. The witness's testimony served only to establish the existing relationship between defendant and the other perpetrators of the crimes. It is clear from the record that the prosecutor never attempted or proved defendant's guilt merely by his association with the other perpetrators of the crimes. Instead, the prosecutor presented substantial evidence that placed defendant at the scene of the crime and established that he actively participated in the robbery and home invasion. Accordingly, the prosecutor did not commit prosecutorial misconduct as claimed by defendant.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Mark J. Cavanagh
/s/ Cynthia Diane Stephens

-12-