*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
August 26, 2021

Plaintiff-Appellee,

v

No. 350430
Calhoun Circuit Court
LC No. 2018-001606-FC

JERRY JUNIOR HEATH,

Defendant-Appellant.

Before: STEPHENS, P.J., and K. F. KELLY and RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions for two counts of armed robbery, MCL 750.529. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to 40 to 60 years' imprisonment. On appeal, defendant argues the following: (1) the trial court abused its discretion by admitting evidence of a prior robbery under MRE 404(b); (2) the jury instruction regarding flight denied him his right to a fair trial, and defense counsel was ineffective for not objecting to it; (3) offense variable (OV) 14 was erroneously scored because there is no proof that he was the leader of the crime; and (4) the evidence was insufficient to convict him of the charged offenses. We agree that OV 14 was erroneously scored, which would put defendant in a different sentencing range, and accordingly remand to the trial court for resentencing only. We affirm in all other respects.

## I. FACTS

This case arises from an armed robbery of two employees, J.B. and D.N., immediately after they closed an Arby's restaurant in Battle Creek, Michigan. Trial testimony established that as J.B. and D.N. were in the parking lot and about to drive away, when two assailants robbed them at gunpoint.[1] The assailants then bound D.N. with zip ties and forced J.B. to re-open the Arby's

---

[1] Only one assailant had a gun.

and open the safe inside.  At that point, a siren from a nearby fire truck scared the assailants, and they ran away.

On a separate occasion, defendant robbed another individual, D.S., as D.S. was closing Sam's Discount Party Store in Battle Creek, Michigan.  The prosecution sought to admit evidence of this robbery to show that defendant had a common scheme or plan, and the trial court allowed the evidence to be heard by the jury.  Defendant was ultimately convicted of two counts of armed robbery.  He now brings this appeal.

## II. ANALYSIS

Defendant first argues that the trial court erred by admitting the evidence of the prior robbery.  We disagree.  "The admissibility of other acts evidence is within the trial court's discretion and will be reversed on appeal only when there has been a clear abuse of discretion." *People v Waclawski*, 286 Mich App 634, 670; 780 NW2d 321 (2009).  If the trial court admitted the evidence in error, defendant has the burden of establishing that more probably than not, the error was outcome-determinative.  *People v Knapp*, 244 Mich App 361, 378; 624 NW2d 227 (2001).

The prosecution may not introduce evidence of a defendant's previous crimes to show the defendant's propensity toward criminality.  *Waclawski*, 286 Mich App at 670.  "Use of other acts as evidence of character is excluded, except as allowed by MRE 404(b), to avoid the danger of a conviction based on a defendant's history of misconduct."  *Id.*

MRE 404(b)(1) governs admission of evidence of bad acts, and it states as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

Our Supreme Court has set forth the following standard to determine when other-acts evidence is admissible: (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must consider, under MRE 403, whether the probative value of the other-acts evidence is substantially outweighed by its potential for unfair prejudice; and (4) upon request, the trial court must instruct the jury that the other-acts evidence is to be considered only for the proper purpose for which it was admitted.  *People v VanderVliet*, 444 Mich 52, 74; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994).

When considering whether the other-acts evidence was offered to prove a common scheme, plan, or system, this Court considers whether "the uncharged misconduct and the charged offense are sufficiently similar."  *People v Steele*, 283 Mich App 472, 479; 769 NW2d 256 (2009). (quotation marks and citation omitted).  "There must be *such a concurrence of common features* that the charged acts and the other acts are logically seen as part of a general plan, scheme, or design."  *Id.* (emphasis in original).  However, "a high degree of similarity is not required, nor are

distinctive or unusual features required to be present in both the charged and the uncharged acts." *Id.* at 480. "[F]or ascertaining the existence of a common plan," "the necessary degree of similarity is greater than that needed to prove intent, but less than that needed to prove identity." *People v Sabin*, 463 Mich 43, 65; 614 NW2d 888 (2000).

Defendant first argues that the evidence was not offered for a proper purpose because the two robberies are not similar enough to show a common scheme or plan. However, there were more than just mere similarities between the two robberies to show a common scheme or plan. There was significant evidence from both robberies that the assailant robbed store employees late at night after they closed their store and were getting into their vehicles. The assailant then took the victims' wallets and walked the victims back to their places of business and tried to get the victims to open the businesses. The assailant fled from the scene each time because of fear that the authorities had been alerted. Also, the assailant was armed each time and wore a shirt over his face as a mask. There were enough similarities between the uncharged robbery of D.S. and the robbery in the present case to be *sufficiently similar*. See *Steele*, 283 Mich App at 479.

Defendant next argues that the evidence of the prior robbery was irrelevant because whether defendant was guilty of D.S.'s robbery has no bearing on whether he was guilty of the robbery in question. "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. MRE 401. And "evidence of similar misconduct is logically *relevant* to show that the charged act occurred where the uncharged misconduct and the charged offense are sufficiently similar to support an inference that they are manifestations of a common plan, scheme, or system." *Sabin*, 463 Mich at 63 (emphasis added).

In this case, defendant's common plan between the two robberies was relevant. The similarities made it more probable that defendant planned and executed the robberies. As stated earlier, these robberies both occurred at night as the employees were closing their place of business and getting into their vehicles. The assailant was also armed and wore a shirt over his face. Therefore, the similarities are relevant to support an inference that they are manifestations of a common plan, scheme, or system. See *id*.

There were differences between the robberies, and defendant highlighted these differences in the trial court. For instance, the Arby's robbery involved two assailants and two victims, while D.S.'s robbery involved one assailant and one victim. The Arby's robbery involved a gun and zip ties, while D.S.'s robbery involved a hammer and no zip ties. But even if this was a case in which reasonable persons could disagree, "the trial court's decision on a close evidentiary question . . . ordinarily cannot be an abuse of discretion." *Sabin*, 463 Mich at 67. Therefore, the evidence was admitted for a proper purpose: showing a common scheme or plan between the two robberies.

Next, defendant argues that the probative value was substantially outweighed by the danger of unfair prejudice and the potential to mislead the jury.

MRE 403 states:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues,

or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

"[M]ost evidence presented against a criminal defendant" is "damaging and prejudicial." *People v Railer*, 288 Mich App 213, 220-221; 792 NW2d 776 (2010).

Assessing probative value against prejudicial effect requires a balancing of several factors, including the time required to present the evidence and the possibility of delay, whether the evidence is needlessly cumulative, how directly the evidence tends to prove the fact for which it is offered, how essential the fact sought to be proved is to the case, the potential for confusing or misleading the jury, and whether the fact can be proved in another manner without as many harmful collateral effects. [*People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008).]

Unfair prejudice occurs "when there is a tendency that the evidence will be given undue or preemptive weight by the jury, or when it would be inequitable to allow use of the evidence." *Waclawski*, 286 Mich App at 672 (quotation marks and citation omitted).

In this case, although the evidence was damaging and prejudicial, the prejudicial effect did not *substantially* outweigh the probative value. See MRE 403. The prior robbery was used to show common scheme or plan and was thus highly probative in that regard. On the other hand, the prejudicial effects were that the prior robbery could show propensity and that defendant could be characterized as violent. However, these prejudicial effects do not substantially outweigh the importance of identification in this case, as shown through a common scheme or plan. Therefore, the prejudicial effect did not substantially outweigh the probative value.

Defendant next argues that the trial court erred when it gave a flight instruction to the jury and that defense counsel was ineffective for failing to object to the instruction. We disagree. Because defendant's jury instruction claim is unpreserved, our review is limited to plain error affecting substantial rights. *People v Czuprynski*, 325 Mich App 449, 466-467; 926 NW2d 282 (2018). Although defendant preserved his ineffective assistance issue by filing a motion for remand in this Court, because this Court denied the motion and no evidentiary hearing has been held, review is limited to errors apparent on the lower court record. See *People v Abcumby-Blair*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 347369); slip op p 8.

"A criminal defendant is entitled to have a properly instructed jury consider the evidence against him." *People v Riddle*, 467 Mich 116, 124; 649 NW2d 30 (2002). The jury instructions must contain the elements of the crime and must allow the jury to consider material issues, defenses, or theories if there is evidence to support them. *People v Armstrong*, 305 Mich App 230, 240; 851 NW2d 856, 862 (2014). "The trial court may issue an instruction to the jury if a rational view of the evidence supports the instruction." *Id*.

The trial court administered the following jury instruction:

There has been some evidence that the Defendant ran away after the alleged crime. This evidence does not prove guilty [sic]; a person may run or hid for innocent reasons, such as panic, mistake or fear. However, a person may run and hide because of a consciousness of guilt. You must decide whether the evid—you

-4-

must decide whether the evidence in true—is true—I'm sorry, and if it is true, whether it shows the Defendant had a guilty state of mind.

Defendant argues that there is no evidence that supported this flight instruction. He argues that the evidence showed that the assailant left the scene because the robbery was completed. However, there was ample evidence to support the flight instruction.

Contrary to defendant's assertions, one of the Arby's robbery victims, J.B., testified that the assailants ran before they took all of the money from the restaurant. J.B. testified that as he was grabbing the money to give to the assailants, a siren from a nearby fire truck scared the assailants. One of the assailants said, " 'oh shit, the cops,' " and then they took the money out of J.B.'s hand and ran. Additionally, the other Arby's robbery victim, D.N., testified that he heard the alarm, then the firetruck, and then saw the assailants run out of the backdoor. Defendant's actions support a rational view that he ran because he thought the police were coming. See *id*. Because a rational view supported the flight instruction, there was no plain error affecting defendant's substantial rights, and defendant has not met his burden for this issue. See *People v Carines*, 460 Mich 750, 764; 597 NW2d 130 (1999).

Defendant further argues that defense counsel's failure to object to the flight jury instructions constituted ineffective assistance of counsel because the flight instruction was irrelevant. Failure to object to an improper jury instruction may constitute ineffective assistance of counsel. See *People v Ortiz*, 249 Mich App 297, 311; 642 NW2d 417 (2001). However, "[f]ailing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). In this case, the trial court did not err when it gave the flight jury instruction. Evidence of flight is relevant and admissible to show "consciousness of guilt." *People v Goodin*, 257 Mich App 425, 432; 668 NW2d 392 (2003). Because the flight jury instruction was warranted here, any objection would have been futile, and defense counsel is not ineffective for failing to make futile challenges. See *id*.

Defendant next argues that the trial court clearly erred when it scored 10 points for OV 14, MCL 777.44. We agree. We review the trial court's findings for clear error. *Armstrong*, 305 Mich App at 242. The trial court's findings are clearly erroneous if, after reviewing the entire record, we are definitely and firmly convinced that it made a mistake. *Id*. The trial court's factual determinations must be supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). The proper interpretation and application of the statutory sentencing guidelines is a question of law that we review de novo. *Id*. When calculating a score under the sentencing guidelines, a trial court may consider all record evidence before it. *Armstrong*, 305 Mich App at 245. If the trial court sentenced a defendant on the basis of a scoring error that altered the appropriate guidelines range, the defendant is entitled to resentencing using appropriately scored guidelines. See *People v Francisco*, 474 Mich 82, 88-91; 711 NW2d 44 (2006).

Pursuant to OV 14, 10 points are assessed when "[t]he offender was a leader in a multiple offender situation." MCL 777.44(1)(a). However, zero points are assessed when "[t]he offender was not a leader in a multiple offender situation," MCL 777.44(1)(b). "[T]he Legislature did not

define what constitutes a 'leader' for the purposes of OV 14." *People v Dickinson*, 321 Mich App 1, 22; 909 NW2d 24 (2017). This Court has applied the following definition of "leader":

> According to Random House Webster's College Dictionary (2001), a "leader" is defined in relevant part as "a person or thing that leads" or "a guiding or directing head, as of an army or political group." To "lead" is defined in relevant part as, in general, guiding, preceding, showing the way, directing, or conducting. [*People v Rhodes (On Remand)*, 305 Mich App 85, 90; 849 NW2d 417 (2014).]

"[F]or purposes of an OV 14 analysis, a trial court should consider whether the defendant acted first or gave directions or was otherwise a primary causal or coordinating agent." *Dickinson*, 321 Mich App at 22 (quotation marks and citation omitted). Other factors significant in determining whether a defendant acted as a "leader" in a criminal undertaking include whether the defendant "displayed any greater amount of initiative beyond employing a more dangerous instrumentality of harm, played a precipitating role in [a co-offender's] participation in the criminal transaction, or was otherwise a primary causal or coordinating agent." *Rhodes*, 305 Mich App at 90; see also *Dickinson*, 321 Mich App at 23. Mere evidence that the defendant had a firearm, while his codefendant did not, is insufficient to demonstrate leadership. See *Rhodes*, 305 Mich App at 90. However, evidence that the defendant issued orders to a codefendant or displayed any greater amount of initiative in assaulting the victim beyond employment of greater instrumentality of harm than the codefendant can be demonstrative of leadership. See *id*.

In this case, there is no evidence that pointed toward defendant as the leader. Neither J.B. nor D.N. could identify the assailants let alone which assailant was defendant. Therefore, the prosecution's assertion that defendant was the one who showed up with the gun and first zip tied D.N. is not supported by sufficient evidence. Further, the testimony was that each assailant attempted to zip tie D.N. Because there is no way to identify which assailant was defendant, there is no way to identify him as the leader during this crime. Therefore, the trial court clearly erred when it assigned 10 points to OV 14. See *Armstrong*, 305 Mich App at 242. Resentencing is required because the subtraction of 10 OV points results in a change of the sentencing guidelines range. See *Francisco*, 474 Mich at 89-92.

In a Standard 4 brief, defendant argues that the evidence was insufficient to convict him, and more specifically, that the evidence was insufficient to identify him. We disagree. A challenge to sufficiency of the evidence invokes the rights to due process of law. *People v Hawkins*, 245 Mich App 439, 457; 628 NW2d 105 (2001). This Court considers a challenge to the sufficiency of the evidence by reviewing the evidence de novo. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). The evidence is viewed in a light most favorable to the prosecution to determine whether any rational trier of fact could have found that the crime's essential elements were proven beyond a reasonable doubt. *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992).

"The elements of armed robbery are: (1) an assault and (2) a felonious taking of property from the victim's presence or person (3) while the defendant is armed with a weapon." *People v Smith*, 478 Mich 292, 319; 733 NW2d 351 (2007). Armed robbery, a specific-intent crime, requires a showing that the defendant intended to deprive the victim permanently of possession of the property. *People v Parker*, 230 Mich App 337, 344; 584 NW2d 336 (1998). "[B]ecause it can

be difficult to prove a defendant's state of mind on issues such as knowledge and intent, minimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be inferred from all the evidence presented." *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008).

The jury has a front-row seat to see and hear witnesses and is in the best position to decide the weight and credibility to be given to their testimony. *Wolfe*, 440 Mich at 515. This Court must "draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowak*, 462 Mich 392, 400; 614 NW2d 78 (2000). "Circumstantial evidence and reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of the crime. All conflicts in the evidence must be resolved in favor of the prosecution." *Kanaan*, 278 Mich App at 619 (internal citation omitted).

In this case, defendant does not dispute that the crime of armed robbery was committed. Rather, defendant disputes that he was not sufficiently identified as the assailant. The prosecution is required to prove identity as an element of every offense. *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). However, similar to other elements of an offense, identity may be proven by circumstantial evidence and reasonable inferences drawn from such evidence. *People v Bass*, 317 Mich App 241, 264; 893 NW2d 140 (2016). In fact, circumstantial evidence is often stronger and more satisfactory than direct evidence. *Wolfe*, 440 Mich at 526. It is true that neither of the victims could identify defendant as an assailant during the robbery. But defendant was sufficiently identified through his common plan or scheme and through DNA evidence.

The testimony from D.S. showed that there was a common plan for both robberies. On both occasions, defendant waited until the employees closed their business and were getting into their vehicles and then attacked them with a weapon. Defendant then took their wallets and attempted to gain entry to the business via the employees. During both robberies, defendant was wearing a shirt over his face and was scared off by the alarm.

Further, the DNA evidence showed there was an enormous probability that defendant handled the zip ties that were used to restrain D.N. during the robbery. On the first zip tie, it was 92-billion times more probably that the DNA profile originated from defendant and two others. On the second zip tie, it was 28-billion times more likely that defendant was a contributor. The expert witness further explained that anything over 10-thousand times more likely was strong support. This Court has previously recognized that DNA identification is generally accepted to be accurate within the scientific community. See *People v Adams*, 195 Mich App 267, 274; 489 NW2d 192 (1992). Therefore, defendant was sufficiently identified through circumstantial evidence and indirect evidence.

Defendant then challenges the credibility of the DNA evidence and argues that the chain of custody was broken. Defendant also argues that the defense expert discredited the DNA analyses as well. However, these are credibility arguments, and it is the jury's duty to assess credibility and give weight to evidence. *Wolfe*, 440 Mich at 515.

## III. CONCLUSION

We affirm defendant's convictions but vacate his sentence and remand to the trial court for resentencing.  We do not retain jurisdiction.

/s/ Cynthia Diane Stephens
/s/ Kirsten Frank Kelly
/s/ Michael J. Riordan