*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

WILLIE GEORGE POTTS, JR.,

        Defendant-Appellant.

UNPUBLISHED
February 22, 2024

No. 364227
Macomb Circuit Court
LC No. 2021-001001-FC

Before: PATEL, P.J., and K. F. KELLY and RIORDAN, JJ.

PER CURIAM.

Defendant appeals by right his jury trial conviction of voluntary manslaughter. Defendant was sentenced, as a third-offense habitual offender, to 120 to 360 months' imprisonment. We affirm defendant's conviction and sentence in all respects, but remand to the trial court for the ministerial task of correcting defendant's judgment of sentence.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case arises from the fatal stabbing of Marcus Triplett at a hotel in Roseville, Michigan. On December 23, 2020, Tanisha Askew, an acquaintance of defendant, and Shante Stinson, an individual who stayed in a Microtel Inn hotel room across from Askew, visited defendant and Triplett at the Extended Stay Hotel, where defendant was staying. During the visit, defendant began recounting an altercation that occurred earlier in the night. Triplett told defendant to stop talking about that incident or else he would punch defendant in the mouth. Defendant continued to talk about the earlier altercation, and Triplett walked over to defendant and "hit him in his mouth twice," after which defendant then left.

Approximately five minutes later, defendant returned to the hotel room and "wildly pushed the door open." He told Triplett, "[You are] embarrassing me, get the f*** out." Triplett then replied, "[I]f I get up one more time again, [I am] going to blow your s*** out." Triplett began to walk toward defendant, who was standing on the outside of the hotel room in the hallway. Triplett did not have a weapon on him, and both Triplett and defendant appeared intoxicated. Triplett joined defendant in the hallway and, because of where Askew was sitting inside the hotel room,

-1-

she could not see either defendant or Triplett during the confrontation. Shortly after, Triplett returned to the room and lifted up his shirt revealing a knife wound.

Defendant came back into the room holding a knife and looking "more hostile." Defendant then stated, "[I am] going to kill this n*****." Askew and Stinson then left the room while Triplett was still leaning over the chair, struggling to breathe. Stinson then called the police. On the way back to the Microtel, Askew and Stinson noticed defendant leave the Extended Stay Hotel and follow them back to the Microtel Inn. Triplett later died from a stab wound to his left chest.

Defendant testified at trial. According to defendant, Stinson, Triplett, and Askew visited him in his hotel room at the Extended Stay Hotel where they drank alcohol and did drugs. Defendant stated Triplett became belligerent and loud, and told Triplett if he wanted to smoke, he needed to do it in the bathroom. Triplett became upset and punched defendant in the mouth. Triplett then told defendant he would "beat [defendant's] a**" and drew a knife. Defendant kicked the knife from Triplett's hand, grabbed the knife, and then stabbed Triplett with it. Defendant stated he was "defending and protecting [himself]." After Triplett was stabbed, defendant "got scared" and "almost immediately" left the room, but denied leaving the room during the incident. Defendant stated he did not call 911 because the incident was "so traumatic."

Defendant was convicted by the jury of voluntary manslaughter, MCL 750.321, and was sentenced as previously stated as a third-offense habitual offender, MCL 769.11. This appeal followed.

## II. ANONYMOUS JURY

Defendant first argues his due-process rights were violated when the trial court referred to the jurors only by their badge numbers during trial. We disagree.

### A. STANDARD OF REVIEW

In order to preserve an issue for appellate review, the issue must be raised before the trial court. See *People v Solloway*, 316 Mich App 174, 197; 891 NW2d 255 (2016). Here, defendant did not object to the trial court referring to the jurors by numbers or raise the issue in the lower court. Therefore, this issue is unpreserved.

We "review[] unpreserved issues, constitutional and nonconstitutional, for plain error." *People v Hanks*, 276 Mich App 91, 92; 740 NW2d 530 (2007). "To establish plain error requiring reversal, a defendant must demonstrate that 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. The third requirement "generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *People v Seals*, 285 Mich App 1, 4; 776 NW2d 314 (2009).

### B. ANALYSIS

An anonymous jury is one in which "certain information is withheld from the parties, presumably for the safety of the jurors or to prevent harassment by the public." *People v Williams*, 241 Mich App 519, 522; 616 NW2d 710 (2000). While an anonymous jury "may promote the safety of prospective jurors," its use may come at the "potential expense to two interests of the

defendant: (1) the defendant's interest in being able to conduct a meaningful examination of the jury and (2) the defendant's interest in maintaining the presumption of innocence." *Id*. at 522-523. Therefore, to challenge successfully a court's use of an anonymous jury, "the record must reflect that the parties have had information withheld from them, thus preventing meaningful voir dire, or that the presumption of innocence has been compromised." *Id*. at 523.

In *Williams*, the trial court referred to the jurors by numbers instead of by their names at trial. *Id*. However, this Court noted that there was nothing in the record to show that "any information was actually withheld from the parties." *Id*. Both parties conducted voir dire and no information other than the juror's names was withheld. *Id*. at 523-524. Thus, there was "nothing to indicate that [the] defendant's ability to effectively examine the venire was compromised in any way." *Id*. at 524. Additionally, the defendant's presumption of innocence was not undermined because there was "no suggestion on the record that the jurors understood the use of numbers rather than names to be anything out of the ordinary." *Id*. We concluded, therefore, that the trial court had not impaneled an anonymous jury "in the strict sense of the term," and thus, defendant's due-process rights had not been violated. *Id*. at 523, 525.

This Court reached a similar conclusion in *Hanks*, 276 Mich App at 94, where the trial court also identified jurors by numbers. Both parties "conducted extensive voir dire" and there was "no indication that any of the jurors believed that there was any significance in the use of numbers instead of names." *Id*. The defendant also failed to establish that using numbers to refer to jurors "prevented him from conducting meaningful voir dire or that his presumption of innocence was compromised." *Id*. Therefore, we concluded the jury was anonymous "only in a literal sense, so none of the dangers of an 'anonymous jury' was implicated." *Id*.

Here, the record reflects that the jurors were identified only by their badge numbers throughout trial. However, the record also shows that, on the first day of trial, both parties conducted extensive voir dire. Additionally, there is nothing in the record to show that any other information besides the jurors' names were withheld from the parties. There is also no indication in the record that any of the jurors believed the use of numbers instead of names was significant to the case. Further, during both the preliminary and closing jury instructions, the court instructed the jury that defendant is presumed to be innocent until proven guilty beyond a reasonable doubt. Thus, we conclude, like the defendants in *Williams* and *Hanks*, defendant has failed to show that the use of numbers compromised his presumption of innocence or kept him from conducting meaningful voir dire. See *Williams*, 241 Mich App at 524; *Hanks*, 276 Mich App at 94. Therefore, we conclude defendant has not established any plain error affecting his substantial rights.

## III. SUFFICIENCY OF THE EVIDENCE

Next, defendant argues the evidence presented at trial was sufficient to show beyond a reasonable doubt that defendant's conduct was justified by self-defense. We disagree.

## A. STANDARD OF REVIEW

We "review de novo a challenge on appeal to the sufficiency of the evidence." *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010). We "examine the evidence in a light most favorable to the prosecution, resolving all evidentiary conflicts in its favor, and determine

whether a rational trier of fact could have found that the essential elements of the crime were proved beyond reasonable doubt." *Id*. at 196. "Circumstantial evidence and reasonable inferences arising therefrom may constitute proof of the elements of the crime." *People v Head*, 323 Mich App 526, 532; 917 NW2d 752 (2018). "With regard to an actor's intent, because of the difficulties inherent in proving an actor's state of mind, minimal circumstantial evidence is sufficient." *People v McKewen*, 326 Mich App 342, 347 n 1; 926 NW2d 888 (2018) (quotation marks and citation omitted).

## B. ANALYSIS

"[F]or an act to be considered voluntary manslaughter, the defendant must kill in the heat of passion, the passion must be caused by adequate provocation, and there cannot be a lapse of time during which a reasonable person could control their passions." *People v Yeager*, 511 Mich 478, 489; ___ NW2d ___ (2023). Regarding the affirmative defense of self-defense, an individual may use deadly force against another if the "individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual." MCL 780.972(1)(a); see also *People v Riddle*, 467 Mich 116, 127; 649 NW2d 30 (2002). Additionally, "[o]nce a defendant raises the issue of self-defense and satisfies the initial burden of producing some evidence from which a jury could conclude that the elements necessary to establish a prima facie defense of self-defense exist, the prosecution must exclude the possibility of self-defense beyond a reasonable doubt." *People v Ogilvie*, 341 Mich App 28, 36; 989 NW2d 250 (2022) (quotation marks and citation omitted).

Viewing the evidence in the light most favorable to the prosecution, the evidence supported, beyond a reasonable doubt, that defendant's conduct was not justified by self-defense. On the night of the incident, Triplett's wrist was injured after a separate altercation earlier in the day. Triplett also was intoxicated and did not have a weapon on him. After Triplett punched defendant in the face, defendant left the room for several minutes, thus leaving the scene and going to a place of safety. When he returned, he aggressively opened the door and began shouting at Triplett to get out. When defendant and Triplett stepped out into the hallway, at some point, defendant stabbed Triplett in the chest. After both men returned to the room, defendant looked "hostile" and was holding a knife. Defendant then stated, "[I am] going to kill this n*****." Triplett did not have a weapon and did not use force other than punching defendant. Askew also believed that Triplett did not want to actually hurt defendant and simply wanted to "teach him a lesson being quiet." Additionally, the evidence does not support that defendant was seriously injured by Triplett's punches. Thus, we conclude defendant did not have an honest and reasonable belief of death or serious bodily injury. Consequently, we also conclude defendant's use of deadly force in response to Triplett's threats went beyond the force needed to stop Triplett's threats of punching defendant. In all, sufficient evidence was presented to establish, beyond a reasonable doubt, that defendant did not act in self-defense.

## IV. PROSECUTORIAL ERROR

Defendant also argues the prosecutor at trial committed prosecutorial misconduct[1] when he (1) violated defendant's constitutional right to remain silent, (2) called defendant a "liar" during closing argument, and (3) argued facts not in evidence in rebuttal. Again, we disagree.

## A. STANDARD OF REVIEW

"In cases alleging prosecutorial misconduct, issues are preserved by contemporaneous objections and requests for curative instructions." *People v Evans*, 335 Mich App 76, 88; 966 NW2d 402 (2020). Here, defendant did not object to the alleged incidents of prosecutorial misconduct at trial, nor did he make any requests for curative instructions. Thus, this issue is unpreserved.

We review unpreserved claims for prosecutorial misconduct for "plain error affecting substantial rights." *People v Ackerman*, 257 Mich App 434, 448; 669 NW2d 818 (2003). "Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings, independent of defendant's innocence." *Id*. at 448-449.

## B. ANALYSIS

## 1. RIGHT TO REMAIN SILENT

The federal Fifth Amendment prohibits the admission of evidence at trial of a defendant's postarrest and post-*Miranda*[2] warning silence. See *Doyle v Ohio*, 426 US 610, 617-619; 96 S Ct 2240; 49 L Ed 2d 91 (1976). However, the admission of testimony "concerning a defendant's silence *before* custodial interrogation and *before* the *Miranda* warnings have been given" is not a violation of a defendant's constitutional right to silence. *People v Schollaert*, 194 Mich App 158, 164; 486 NW2d 312 (1992) (emphasis added). Further, "a prosecutor may comment on a defendant's failure to report a crime when reporting the crime would have been natural if the defendant's version of the events were true." *People v Goodin*, 257 Mich App 425, 432; 668 NW2d 392 (2003).

In *Goodin*, the defendant argued the prosecutor committed misconduct and violated the Fifth Amendment when the prosecutor: (1) elicited testimony that the defendant did not contact the police in the days following the crime; and (2) emphasized this testimony during closing argument. *Goodin*, 257 Mich App at 432. The Court concluded that, because "the silence occurred before any police contact," the prosecutor was not prohibited from commenting on that silence. *Id*. Further, the prosecutor was permitted to elicit evidence of flight (including the act of fleeing the scene of a crime) to "support an inference of consciousness of guilt." *Id*. (quotation marks and

---

[1] As we noted in *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015), "the phrase 'prosecutorial misconduct' has become a term of art in criminal appeals . . . [but] these claims of error might be better and more fairly presented as claims of 'prosecutorial error,' with only the most extreme cases rising to the level of 'prosecutorial misconduct.' "

[2] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

citation omitted). Thus, any of the prosecutor's comments regarding the "evidence of flight and any inferences that can be drawn therefrom" did not infringe upon the defendant's privilege against self-incrimination. *Id*. at 432-433.

Here, the prosecutor asked defendant why, if it were true he acted in self-defense, he did not call the police after the incident. The prosecution also asked defendant, "You just left him inside the hotel room is what [you are] saying. You ran away . . . ?" Like in *Goodin*, the prosecutor was asking defendant questions about his silence that occurred *before* his arrest or any contact with the police. Additionally, because the evidence of flight supported an inference of guilt, the prosecutor was allowed to question defendant about why he left the scene without informing anyone of what had happened. See *id*. at 432-433. Likewise, had defendant's version of events been true (i.e., that defendant acted in self-defense), it would be reasonable for the prosecutor to comment on defendant's failure to report the crime. See *id*. 432. Therefore, we conclude defendant cannot show plain error affecting his substantial rights that the prosecutor violated defendant's Fifth Amendment right to silence.

## 2. DENIGRATION OF DEFENDANT

Generally, "prosecutors are accorded great latitude regarding their arguments and conduct." *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995) (quotation marks and citation omitted). Consequently, they are permitted to "argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *Id*. (quotation marks, citation, and brackets omitted). However, "prosecutors should not . . . express their personal opinion of a defendant's guilt, and must refrain from denigrating a defendant with intemperate and prejudicial remarks." *Id*. at 282-283. Comments made during closing argument are "reviewed in context to determine whether they constitute error requiring reversal." *Id*. at 283.

Defendant argues the prosecutor "crossed the line" by calling defendant a "liar." In support of this argument, defendant cites the prosecutor's closing argument in which he stated: "[T]he defendant was in no danger of being killed or seriously injured. He left that room for five to ten minutes after being struck twice by Mr. Triplett. His belief, if any, was dishonest and unreasonable." However, nowhere in the record did the prosecutor explicitly call defendant a "liar." The legal standard for establishing self-defense requires defendant to show he "*honestly and reasonably* believe[d] his life [was] in imminent danger or that there [was] a threat of serious bodily harm." *Riddle*, 467 Mich at 127 (emphasis added); see also MCL 780.972(1)(a). Thus, the prosecutor's decision to refer to defendant's belief as "dishonest and unreasonable" merely incorporated the legal standard into his closing argument to show that defendant was not acting in self-defense during the incident. Thus, considering the context of the prosecutor's statement, we conclude he did not attack defendant with "intemperate and prejudicial remarks," see *Bahoda*, 448 Mich at 283, and defendant has not established plain error affecting his substantial rights.

## 3. ARGUING FACTS NOT IN EVIDENCE

Generally, "[a]n attorney may not refer to facts that are not in the record." *People v Meissner*, 294 Mich App 438, 457; 812 NW2d 37 (2011). When an attorney references, during closing argument, a fact that was not in the record, "reversal is not required [if] the trial court clearly instructed the jury that the lawyer['s] statements and arguments are not evidence." *Id*. "It

is well established that jurors are presumed to follow their instructions." *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998). Reversal will also not be required "if the prejudicial effect of the prosecutor's comments could have been cured by a timely instruction." *People v Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2001) (quotation marks and citation omitted). Further, "[a]n otherwise improper remark may not rise to an error requiring reversal when the prosecutor is responding to the defense counsel's argument." *Id*. at 593 (quotation marks and citation omitted).

In the instant case, during closing argument, defense counsel first remarked on Stinson's absence and stated, "[Stinson] was there. [She is] a res gestae witness and somehow [she is] missing . . . . [The prosecution should have] kept track of her, but they [did not]." During rebuttal, the prosecutor responded to defense counsel's argument and stated, "I asked her, [Askew], when was the last time you saw Shante Stinson. She said it was that night in question. [She has] never had any contact with her ever again; neither have I." The prosecutor then continued, "Nobody knows where [Stinson] is. If I knew where she was, I would have had her testify today, but unfortunately, [she is] not here. So [you all are] going to get that jury instruction as requested by [] defendant that says that her testimony may not have been in my favor." Because the prosecutor was responding to defense counsel's argument that it was the prosecution's responsibility to keep track of Stinson, we conclude the prosecutor's remarks that he did not have any contact with her was not plain error. See *id*.

Additionally, we conclude the comments, even if they were improper, were also cured by a timely instruction from the court. After the prosecutor's closing argument and during jury instructions, the trial court instructed the jury, "Shante Stinson is a missing witness whose appearance was the responsibility of the prosecution. You may infer that this witness's testimony would have been unfavorable to the prosecution's case." Thus, even if the prosecutor improperly informed the jury that he did not have contact with Stinson, the court quickly cured any prejudicial effect by informing the jury itself that it may infer Stinson's testimony weighed against the prosecution's case. See *id*. at 586.

The trial court also clearly instructed the jury that "[t]he lawyers' statements and arguments and any commentary are not evidence . . . . You should only accept things that the lawyers say that are supported by the evidence or by your own common sense and general knowledge." Thus, even if the prosecutor's statement regarding Stinson's absence were considered a fact not in the record, the trial court properly instructed the jury that an attorney's statements are not considered evidence. See *Meissner*, 294 Mich App at 457. Because a jury is presumed to follow its instructions, we conclude defendant cannot show the prosecutor's statement regarding Stinson's absence resulted in plain error affecting defendant's substantial rights. See *Graves*, 458 Mich at 486.

V. INEFFECTIVE ASSISTANCE OF COUNSEL

Alternatively, defendant argues his trial counsel was ineffective for failing to object to the alleged instances of prosecutorial misconduct. We disagree.

A. STANDARD OF REVIEW

"In order to preserve the issue of effective assistance of counsel for appellate review, the defendant should make a motion in the trial court for a new trial or for an evidentiary hearing." *People v Sabin*, 242 Mich App 656, 658; 620 NW2d 19 (2000). An issue of effective assistance of counsel may also be preserved for "review by filing in this Court a motion for remand." *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020). Defendant did not make a motion for a new trial or for an evidentiary hearing in the trial court; nor did defendant file a motion for remand with this Court. Thus, defendant's issue regarding ineffective assistance of counsel is unpreserved. We "review[] unpreserved claims of ineffective assistance of counsel for errors apparent on the record." *People v Johnson*, 293 Mich App 79, 90; 808 NW2d 815 (2011).

## B. ANALYSIS

A criminal defendant's right to counsel is guaranteed by both the United States and Michigan Constitutions. See US Const, Am VI; Const 1963, art 1, § 20. However, for a defendant to prevail on a claim of ineffective assistance of counsel, he "must establish (1) the performance of his counsel was below an objective standard of reasonableness under prevailing professional norms and (2) a reasonable probability exists that, in the absence of counsel's unprofessional errors, the outcome of the proceedings would have been different." *Sabin*, 242 Mich App at 659.

Thus, "[e]ffective assistance of counsel is presumed, and [a] defendant bears a heavy burden of proving otherwise." *People v Johnson*, 315 Mich App 163, 174; 889 NW2d 513 (2016). A defendant also "must overcome a strong presumption that the assistance of his counsel was sound trial strategy, and he must show that, but for counsel's error, the outcome of the trial would have been different." *Id*. "This Court does not second-guess counsel on matters of trial strategy, nor does it assess counsel's competence with the benefit of hindsight." *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012). As discussed above, the trial prosecutor did not commit prosecutorial misconduct because he (1) did not violate defendant's constitutional right to remain silent, (2) did not denigrate defendant, and (3) did not argue facts not in evidence. Therefore, because defendant's trial counsel was not required to make futile objections, we conclude defense counsel's performance did not fall below an objective standard of reasonableness. See *Ericksen*, 288 Mich App at 201.

Finally, review of the record demonstrates that defendant's judgment of sentence incorrectly states that defendant was convicted of involuntary manslaughter when, in fact, his conviction was for the lesser included charge of voluntary manslaughter. We therefore remand the case to the trial court for the ministerial task of correcting defendant's judgment of sentence.

In all other respects, we affirm defendant's convictions and sentences. We do not retain jurisdiction.

/s/ Sima G. Patel
/s/ Kirsten Frank Kelly
/s/ Michael J. Riordan